GARDNER P. LADD *vs.* THOMAS M. CHASE & others.
THOMAS M. CHASE *vs.* GARDNER P. LADD.

Essex.   November 3, 1891. — January 9, 1892.

Present: ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Equity Jurisdiction — Interpleader — Bills for Instructions — Superior Court — Will — Execution of Power.*

An executor, who is also the residuary legatee under the will, and as such interested in funds in his hands, cannot maintain a bill of interpleader as to their disposition, but may maintain a bill for instructions.

The Superior Court, under the St. of 1883, c. 223, §§ 1, 2, has jurisdiction in equity of bills for instructions.

A testator, by his will, gave the residue of his property to his wife "to her use and behoof forever," providing that, "if any of the property which I have given my beloved wife aforesaid, shall not have been expended by her for her support and maintenance during her lifetime, then" so much as remained was to go to persons named. *Held,* that the widow could use the entire estate, if necessary, for her reasonable support and maintenance, but in no other way, with power to sell the real estate for that purpose; and that any proceeds of the estate in her possession at her death would belong to her husband's estate.

The residue of an estate, consisting both of personal and real property, given by a testator to his wife with power to sell the same and use the proceeds, principal and income, for her support and maintenance during her lifetime, was made up largely of a farm which was run out, and the house thereon was old, in poor repair, and needed alterations to make it rentable. The income of the estate was insufficient to support her, and, after partially using the principal of

the personal estate for that purpose, she gave a quitclaim deed of the farm for all it was fairly worth. On a bill in equity for instructions as to the disposition of the proceeds of the farm after her death, the administrator *de bonis non* of the testator's estate was permitted to testify that the widow, at the time of conveying the farm, told him that she wanted to sell it because it yielded her no income, and invest the proceeds. *Held*, that the evidence was properly admitted; that a finding was warranted that the widow intended to convey the farm in fee in execution of the power; and that the deed was a valid execution of the power.

THE FIRST CASE was a bill in equity, filed in the Superior Court by Gardner P. Ladd, executor of the will of Ann L. Chase, against the administrator *de bonis non* with the will annexed of Thomas H. Chase, and the legatees under the will of .Mrs. Chase and others, as a bill of interpleader, and for instructions respecting the disposition of certain savings bank deposits in the plaintiff's possession. THE SECOND CASE was a bill in equity, also filed in the same court by such administrator against such executor, to obtain possession of the deposits. The cases were heard in the Superior Court, and in this court, on appeal, on the report of a master to whom both cases were referred, and on exceptions thereto.

The master found the following facts. Thomas H. Chase died on January 3, 1869, and by his will, which was duly admitted to probate, appointed his wife, Ann L. Chase, as executrix, and provided, after the payment of his debts and funeral expenses, as follows:

" Second. All the rest and residue of my estate, real, personal, or mixed, of which I shall die seised and possessed, or to which I shall be entitled at the time of my decease, I give, devise, and bequeath to my beloved wife, Ann L. Chase, to her use and behoof forever. Provided, however, that·my said wife shall cause to be erected on my lot in Merrimac Cemetery in said West Newbury a handsome marble monument, worth at least five hundred dollars. Also, to put the monument now standing on my lot in said cemetery on the lot where Jane Jaques is buried. All to be paid for by. my said wife out of the estate which I have given to her. Provided also, that if any of the property which I have given my beloved wife aforesaid shall not have been expended by her for her support and maintenance during her lifetime, then and in that case my will is that so much of said estate as shall remain unexpended at

the time of her decease shall be disposed thereof in manner following, to wit." Then followed bequests to certain persons, "to their own use and behoof forever."

The estate of Thomas H. Chase, after paying his debts and funeral charges, and providing for the monument mentioned in the will, consisted of a parcel of land with a house thereon, a farm, and woodland, worth about $1,000, $3,000, and $250, respectively, and personal property amounting to $1,149.62. The income of this estate was insufficient to support the widow, who had no other means of support, and on April 6, 1870, having used for that purpose a part of the personal estate, cutting it down to $1,000, she made a conveyance whereby, in consideration of $2,650 paid by the grantees, she did "remise, release, and forever quitclaim unto the said" grantees, "their heirs and assigns, a certain tract or parcel of land," describing the farm by metes and bounds, "to have and to hold the above released premises, with all the privileges and appurtenances to the same belonging, to the said" grantees, "their heirs and assigns, to their use and behoof forever." The farm was at this time run out and greatly depreciated in value, and the price was all that it was fairly worth; the house on it was an old one, in poor repair, and requiring some alterations to make it rentable, and the sale was in all respects an advantageous one for the estate. The administrator *de bonis non* was permitted to testify that the widow told him at the time of the sale that the farm afforded her no income, that she could not improve it or carry it on, and wanted to sell it and invest the proceeds. The master found that the widow "understood that she derived her authority to sell said farm from the will of her husband, and that she sold and conveyed said farm because the income of her real and personal estate was insufficient to provide for her support and maintenance during her lifetime; and that, whatever may have been her understanding or intention for the future, this sale and conveyance was made by her in strict execution of the power given her by the aforesaid will."

Ann L. Chase died on June 29, 1889, leaving a will, by which, after pecuniary legacies amounting to $1,900 to various relatives, she gave to Gardner P. Ladd the residue of her estate, and appointed him her executor.

At her death she had $1,000 on deposit in various savings banks, being the personalty remaining from her husband's estate, the $2,650 received from the sale of the farm, and the accrued interest on both these sums, except so far as used for her support. Ladd has the deposit-books in his possession, one of which stood in the name of " Ann L. Chase, trustee for Gardner P. Ladd," and another in the name of " Ann L. Chase, in trust for Joseph S. Noyes," the latter showing a deposit for $300 and accrued interest. This deposit was made by her with the intention that the deposit should become the property of Noyes upon her death, in return for services which he had rendered her during her lifetime.

The questions raised by the report and the exceptions were, what was the nature of the interest which Mrs. Chase took in her husband's estate; whether the conveyance of the farm was an execution of the power given her under the will, or whether it operated as a conveyance of her life interest alone; and whether, with the exception of the $300, which it was agreed belonged to Joseph S. Noyes, the rest of the funds in her possession at her death should go to the administrator *de bonis non* of her husband's estate, or partly to him and partly to her executor.

*B. B. Jones,* for the administrator *de bonis non.*

*W. H. Moody,* for the legatees of Ann L. Chase.

MORTON, J. The bill in the first case cannot be maintained as a bill of interpleader, by reason of the interest which the plaintiff has in the subject matter of the suit. 2 Dan. Ch. Pl. & Pr. (3d Am. ed.) 1660, 1668. We think, however, it may be regarded as a bill for instructions, in which case the interest of the plaintiff in the subject matter would not be fatal. *Stevens* v. *Warren,* 101 Mass. 564. *Batchelder, petitioner,* 147 Mass. 465, 470.

The further question then arises whether a bill for instructions can be brought in the Superior Court, and we think it can. The jurisdiction of this court in the matter of bills for instructions has been referred to the general equitable jurisdiction in the matter of trusts conferred upon it by statute. *Treadwell* v. *Cordis,* 5 Gray, 341, 348. *Batchelder, petitioner,* 147 Mass. 465, 470. Pub. Sts. c. 151, § 2, cl. 2. By the St. of 1883, c. 223,

§ 1, the Superior Court was given "original and concurrent jurisdiction with the Supreme Judicial Court in all matters in which relief or discovery in equity is sought." By § 2 of the same act, it is provided that "all the sections of chapter one hundred and fifty-one of the Public Statutes, except section one, . . . shall apply, except as herein otherwise provided, to suits in equity in the Superior Court." Original and concurrent jurisdiction with the Supreme Judicial Court would thus seem to have been given to the Superior Court of all the various matters enumerated in § 2 of chapter 151 of the Public Statutes. Among them is the matter of trusts, out of which, as we have already seen, the jurisdiction of this court over bills for instructions has come. In *Baldwin* v. *Wilbraham*, 140 Mass. 459, the court assumed that the equity powers named in the Pub. Sts. c. 151, § 2, were given to the Superior Court, but held in effect that the statute did not operate to vest the Superior Court with certain special powers and duties with which the Supreme Judicial Court was charged, and which were not within the general jurisdiction of a court of equity.

We come next to the real questions at issue between the parties. They are, first, the nature of the interest which the widow took in her husband's estate; secondly, whether the conveyance relating to the farm was an execution of the power under the will, or a sale of her own interest merely; and thirdly, whether, deducting the $300 which it is agreed belongs to Joseph S. Noyes, the rest of the funds in her possession at the time of her death belong to the administrator *de bonis non* of her husband, or partly to him and partly to the executor of her will.

In regard to the first question, we think the widow took such an interest in the estate for her life as gave her the right to use the estate, so far as necessary for her reasonable support and maintenance, even to the extent of using it all, but for no other purpose; and also gave her the power to sell and convey the real estate, and use the proceeds of that in the same manner, but in no other. And this we understand to have been the substance of the decision in *Chase* v. *Ladd*, 153 Mass. 126. See also *Hall* v. *Otis*, 71 Maine, 326; *Stuart* v. *Walker*, 72 Maine, 145. It would follow from this, that, so far as the funds in her pos-

session at her death were the proceeds of her husband's estate, they would belong to the administrator *de bonis non* of his estate.

The next question is, whether the deed of the farm was given and operates as an execution of the power under the will. The master has found as a fact that the deed was a sale and conveyance by Mrs. Chase, in execution of the power given to her in the will, and the facts stated by him would seem to warrant such a finding. The price which she received for the farm was, as the master finds, "all that said farm was fairly worth." The farm was run out, and the house an old one, in poor repair, and needing alterations to make it rentable. It was not probable, therefore, that she would desire to occupy it. The income of the estate was insufficient to support her, and she was using the principal. The deed which she gave, although in form a quitclaim, was sufficient to convey a fee when made in execution of the power, and it purported to convey the farm, — something she would have no right to do except in execution of the power. The farm formed a large portion of the estate, and the only reasonable conclusion would seem to be, that she was selling the fee of the farm, not her life interest, and that she was making the sale with a prudent regard to her necessities. *Richardson* v. *Richardson*, 80 Maine, 585. It was not necessary that her " intention to execute the power should appear by express terms or recitals in the instrument." *Gould* v. *Mather*, 104 Mass. 283, 290.

It was sufficient if it appeared from acts, words, or deeds, or from the situation and circumstances of the parties. *Blagge* v. *Miles*, 1 Story C. C. 426. *Warner* v. *Connecticut Ins. Co.* 109 U. S. 357. *Funk* v. *Eggleston*, 92 Ill. 515. *Sewall* v. *Wilmer*, 132 Mass. 131. *Moody* v. *Tedder*, 16 S. C. 557. The question in such case is, first, whether it was the intention of the donor of the power to execute it; and secondly, whether it has been validly executed. We can have no reasonable doubt that the intention of the widow was to convey the farm in fee in execution of the power, and that the deed was a valid execution of the power.

The statements of Mrs. Chase were admissible in favor of the administrator *de bonis non* of Thomas H. Chase as tending

to show what her understanding and purpose were in making the deed of the farm.

The result is, that the exceptions to the master's report are overruled; that in the first case a decree is to be entered in favor of Joseph S. Noyes for the $300, which the master finds was held in trust for him, and for the administrator *de bonis non* of Thomas H. Chase for the rest of the funds; and that the order in the second case will be,					*Bill dismissed.*