EDMUND J. PARKER, trustee in bankruptcy, complainant,

*v.*

ANNIE E. TRAVERS et al., defendants.

[Submitted June, 1908.    Decided November 16th, 1908.]

1. When to a life estate, with remainder over of what may be undisposed of, the will adds a power of disposition, the property right of interest of the life tenant is not thereby enlarged, but the devisee takes the life estate only with a power of disposal, to be exercised by her during the continuance of the life estate, and for her benefit.

2. Testator devised and bequeathed all his property not disposed of to his widow, with power of disposition, the remainder as to all property not disposed of by the widow to testator's daughter in case she survived the widow, and in the event of the widow marrying again she should have only one-third of the property remaining, the balance to be invested for, and to be paid to, the daughter on her attaining majority. The widow conveyed all the real estate devised by the will to B., to whom she was afterwards married, and he, immediately after the conveyance, conveyed to his son, who reconveyed to the widow.—*Held*, that, on the widow's remarriage, the daughter acquired an absolute estate in two-thirds of the land, and that the widow's subsequent deed to the daughter was only effective to transfer an undivided one-third thereof.

3. Where a suit by a bankrupt's trustee to set aside a conveyance by the bankrupt to her daughter was based entirely on the charge that the conveyance was to hinder and delay E., who was the only real creditor in the bankruptcy proceedings, E., having accepted from defendant the balance due on a loan for which she held the title to the land, and having thereupon conveyed the land to defendant, was estopped to claim that a conveyance of the bankrupt's alleged interest in the land to defendant was fraudulent as to her.

4. Where a bankrupt owned the equitable title to certain land, subject to an indebtedness, which she paid, and then induced the creditor to convey the property to defendant, her daughter, within four months prior to the filing of the bankruptcy petition, such conveyance was, in effect, a conveyance by the bankrupt, and was voidable at the instance of her trustee.

5. Where defendant participated with her mother, a bankrupt, in procuring transfers to her to hinder and delay the mother's principal and only creditor, the conveyance was voidable, though given in satisfaction of an honest debt.

6. Where a bankrupt only owned an undivided one-third of certain land, which she fraudulently conveyed to defendant, and the bill of the trustee in bankruptcy to set aside such conveyance, and the answer, admitted that defendant received $6,370 from certain insurance on buildings destroyed by fire, after paying $4,630 in discharge of mortgage liens, for which the policies had been pledged as collateral, defendant was only chargeable with one-third of such sum, and not one-third of the entire amount of the insurance, and the error was not cured by the fact that the decree only vacated the conveyance subject to all valid mortgages existing at the time it was made, where the mortgage debts had been discharged and were not reinstated by the decree.

7. A decree should not be disturbed because it imposed a lien on defendant's land for the amount found due complainant, where no such objection was contained in defendant's reasons for appeal.

8. Where complainant, a bankrupt's trustee, did not appeal from the part of a decree which charged against defendant the value of furniture transferred by the bankrupt, complainant's objection that the amount so charged was less than the conceded value of the furniture in defendant's answer would not be reviewed.

9. Where a bankrupt's trustee was successful in setting aside a fraudulent conveyance made by the bankrupt to defendant, the trustee was entitled to costs.

10. Where defendant was obliged to appeal to correct a decree against her which was improper, she was entitled to costs on the appeal, including cost of printing, though complainant was successful in the suit.

On appeals of complainant-defendant Annie E. Travers, and defendant Sophie V. O'Brien, from a decree of the court of chancery advised by Vice-Chancellor Bergen, who delivered the following opinion:

"James Travers died November 1st, 1883, testate, leaving him surviving a daughter, Anna E. Travers, and a widow, Sophie V. Travers, who on August 15th, 1889, married William H. O'Brien, now deceased. When he died, James Travers was seized of certain real estate, situate at Point Pleasant, in this state, which may be sufficiently described as lots Nos. 4, 5, 289 and 290, on the map of lands of the Point Pleasant Land Company, and also of an equal undivided half part of lots numbered 17 and 18 on said map. He also left personal property, the amount of which is in dispute, but as it, except the portion used by the widow, and not accounted for, about which the complainant raises no question, was used to improve the real estate, and is devised in the same manner as it is, the question of the amount of the personal estate will only become important should it be necessary to determine whether a reasonable consideration was paid by the daughter to the mother for the conveyance of the real estate which the present proceeding assails. That portion of the will of James Travers pertinent to the issue devises and bequeaths:

" 'To my wife while she remains my widow, all of my property of every description and character not hereinbefore disposed of, with full power of disposition and alienation provided, however, that in case my daughter survives her, that all the property not disposed of prior to my wife's decease, shall be and become the property of our said daughter, and in the event of my wife contracting another marriage, then it is my will that she shall possess and enjoy as of her own right, only one-third of the property then remaining, and that the other two-thirds shall be invested and held in trust for my daughter Annie, and paid to her upon attaining her majority, and furthermore should my daughter die without leaving child or children, it is my will that any property which she may be entitled to or enjoy under this will, shall go to my two sisters, Mrs. Sidney Wiginia Mitchell, and Mrs. Mary Wynee, their heirs and assigns, share and share alike.'

"The widow was appointed executrix of the will, which she caused to be probated, and took upon herself the execution thereof, but no inventory was ever made by her of the personal estate, nor has she accounted for the same, either in the orphans or prerogative court. In 1884 the defendant Sophie V. Travers erected a cottage at a cost of $6,000 or $7,000 on lots 289 and 290, manifestly using a portion of the personal estate of her deceased husband for that purpose, as she had no other funds, and

on August 13th, 1888, she individually, and not as executrix, conveyed all of the real estate devised by the will of her husband to William H. O'Brien, to whom she was afterwards married, and he, on the day following, conveyed the same lands to his son, Bryan O'Brien, who on August 15th, 1888, as admitted in defendant's answer, reconveyed the same to her. In 1892 she caused to be erected a building on lots 4 and 5 to be used as a hotel, at a cost which not only exhausted all of the personal property of the Travers' estate remaining, admitted by Mrs. O'Brien to have been about $18,000 or $20,000, but required the raising of additional funds, which was accomplished by mortgaging the real estate. In 1895 lot 17 was sold by proceedings in chancery, and purchased by Mrs. O'Brien, she thus acquiring the outstanding title which was not vested in her former husband. On February 23d, 1905, Sophie V. O'Brien conveyed to the defendant Annie E. Travers all of her interest in the foregoing lands, as well as in another tract, to be hereinafter referred to. At the time this conveyance was made Mrs. O'Brien was indebted to one Elizabeth O'Brien, a sister of Mr. O'Brien, and judgments had, on February 10th, 1905, been entered against her therefor in the court of common pleas, in the county of Philadelphia, in the State of Pennsylvania, for over $6,000. The judgments were assigned to a Mr. Roney, residing in Camden, New Jersey, who on February 15th, 1905, commenced an action in the supreme court of this state to recover the amount due thereon, which action was defended, and, as stated by counsel on the argument, yet remains undetermined. Having transferred all of the property to her daughter, Mrs. O'Brien, on September 8th, 1905, filed her petition in bankruptcy in the United States district court for the district of New Jersey, from which it appears that the only debts then owing by her, outside of a few traders' accounts, amounting to $165, and an alleged claim of the daughter, was the debt due on the O'Brien judgments. The judgment indebtedness and the claim of the daughter being presented, proved and allowed in the bankruptcy proceedings, the complainant, as trustee in bankruptcy, filed his bill of complaint in this cause, charging that the conveyance heretofore referred to was contrived and carried out for the purpose of hindering and delaying

creditors, and therefore void, upon which a prayer is rested to have the conveyance declared fraudulent and void, and the land decreed to be the property of the debtor, and made subject to the payment of her debts. As to the property now under consideration, the first question to be determined is what was the state of the title which was conveyed to the daughter in 1905, she claiming that on the marriage of her mother two-thirds of the property passed to her, and that she paid full value to her mother for the other one-third. The insistment of the complainant is that, by virtue of the conveyance from Mrs. Travers and the reconveyance to her, the absolute title vested in her, and that any right which the daughter took under the will of her father, in the event of remarriage, was defeated thereby, because that act was a disposition of the property, and under the terms of the will vested an absolute estate in the mother, so that nothing remained of the estate to go to the daughter when she, the mother, remarried.

"The rule is well established in this state that, when to a life estate, with a remainder over of what may be undisposed of, there is added a power of disposition, the property right or interest of the life tenant is not thereby enlarged, but the devisee takes a life estate only, with a power of disposal to be exercised by the devisee during the continuance of the estate, for his benefit. *Robeson* v. *Shotwell, 55 N. J. Eq. (10 Dick.) 318.* The interest in the real and personal property of James Travers, which his widow acquired under the devise to her above set out, was a life estate, determinable upon her remarriage, with the power of disposal and alienation during the continuance of the estate, subject to a gift over of what remained undisposed of at her death should she remain unmarried, and also subject to the condition that, in the event of her remarriage, she should take in her own right one-third of the property then remaining, and invest the residue for the benefit of her daughter, to be paid to her when she became of age. It is admitted by the complainant that two-thirds of the personal estate remaining in the hands of the widow when she married immediately became a trust fund for the benefit of the daughter, but he insists that, as to the real estate, the widow, having exercised her power of disposal, thereby

became entitled to an absolute estate and title in the lands, thus defeating the gift over to the daughter which was to become effective at the termination of the life estate. I find myself unable to accept this result, for, assuming that the contention of the complainant that the conveyance was executed for the purpose of defeating the gift over is correct, it could not be supported as a *bona fide* exercise of the power conferred, which must always be executed in good faith, looking to the carrying out of the expressed intention of the party creating the power. By the gift over of what remained undisposed of at the death of the life tenant, and the substituted disposition on the remarriage of the widow of what then remained, the testator plainly indicated that it was his intention that his widow should exercise the power of disposal and alienation to such extent as might be required for the beneficial enjoyment of the property during her tenancy, but clearly a transference of title which did not alter the identity of property or owner, for the purpose of defrauding the remainderman, was not such an exercise of the power of disposal granted as to change a life estate to a fee-simple, nor do I think it would have made any difference in this case if there had been an actual sale and the property converted into money, for the proceeds thereof which remained in her hands undisposed of when the tenancy ended would have been a part of the estate 'that remains,' and be subject to the alternative bequest. The purpose for which the conveyances were made does not appear in the deeds, and, although the intention of the grantor must, if possible, be gathered from the writing, parol evidence is admissible to show the object for which the power was exercised, where the deed does not disclose it, and on this subject the life tenant, Mrs. O'Brien, testified that, before her second marriage, Mr. O'Brien, her intended husband, who was a lawyer living in Philadelphia, advised her to alienate the property, before her marriage, 'otherwise, if I kept the ground just as it was, in my name, that I would not be able to sell until Annie became of age, and that the property might depreciate.' She also testified that she was advised that the transfer would not affect Annie's interest, for by her father's will she would be entitled to two-thirds of the property as soon as she (the mother) married. This evidence

negatives the claim of the complainant that the conveyance was intended to be, and was, an exercise of the power of disposal for the purpose of conversion, but, on the contrary, shows that it was an alienation of the property for other purposes, and was not intended to change the character of the estate then held by the life tenant. I am satisfied that in 1905, when the conveyance was made to the daughter, she was entitled to have two-thirds of the property of which her father died seized, which is described as lots 4, 5, 289 and 290, conveyed to her without consideration, and that her mother was then seized, in her own right, of the one-third part of the same land.

"In addition to the foregoing other lands, being lots 2 and 3 on said map, were conveyed by the same deed to Annie E. Travers, the status of which will now be considered. In 1891 these lots were conveyed by a Mr. Lomas to William H. O'Brien, and the consideration was paid with $3,000 borrowed by O'Brien from Elizabeth, his sister, as appears from a paper-writing, in the nature of a declaration of trust or equitable mortgage, by the terms of which he and his wife, Sophie, agreed to convey said lots to Elizabeth upon default in payment of the sum so loaned. William E. O'Brien held the legal title to this land when he died, and by his last will devised it to his sister, Elizabeth. It is claimed by the answer of both defendants that the property belonged, in equity, to Sophie, subject to the payment of the loan; that of this she had paid $2,000, although the legal title was vested in Elizabeth, who, on May 22d, 1905, conveyed the lots to the daughter. As the equity of the present proceeding is based entirely upon the charge that this conveyance was contrived for the purpose of hindering and delaying Elizabeth, who is the only real creditor in the bankruptcy proceedings, in the collection of debts which were then in existence, I am of opinion that, as she accepted from the daughter the balance that was due on her loan, and conveyed to that daughter this particular land with full knowledge of all the conditions, she is estopped by her deed, and cannot justly complain that a conveyance, which she made with full knowledge of the situation, is a fraud perpetrated by the defendants against her, and shall advise that the bill be dismissed as to lots 2 and 3. As to lots 17 and

18, of which the testator died seized, it appears from the pleadings that they were sold in partition proceedings, and lot 17 was purchased by the mother, and by her conveyed to one Van Note in order that he might make a sale of it, but substantially, as I construe the evidence, for the purpose of securing to him, out of the proceeds of such sale, a debt of $200. This debt the daughter paid, and he conveyed the lot to her August 3d, 1905. It is not denied that the property then belonged equitably to Mrs. O'Brien, and the conveyance by Van Note was, in effect, a conveyance by Mrs. O'Brien, and, as the transfer to the defendant Annie E. Travers was made within four months of the filing of the bankruptcy petition, it is clearly void as against the trustee in bankruptcy, under the Bankruptcy act, and if this conveyance is a hindrance to the application of the property to the payment of the bankrupt's debts, it should only be allowed to stand as a mortgage to secure the amount paid by the daughter, viz., $200. As to lot 18 it is impossible to ascertain, from the pleadings or evidence, what became of it. It was sold in partition proceedings at the same time lot 17 was sold, but who became the purchaser, or where the title is now vested, I am unable to discover, and certainly in the present state of the proceedings no decree can be made regarding it. There yet remains to be considered a tract of land described in the pleadings as lot No. 1. This lot was purchased November 16th, 1895, by the defendant Sophie O'Brien, and on January 21st, 1905, she conveyed it to her daughter, without any consideration other than an alleged indebtedness from the mother to the daughter on account of her interest in the estate of her deceased father. It also appears by the pleadings that, when the conveyance of the real estate was made, the mother also transferred to the daughter a considerable quantity of furniture, which the daughter admits was of the value of $1,500. The bill charges that it was of much greater value, but no evidence was produced upon which I can base any reliable estimate of its value, and I have concluded to accept the figure admitted by the defendant. It therefore appears that at the time of this conveyance the mother was possessed of an equal undivided one-third interest in lots 4, 5, 289 and 290, and the whole of lot No. 1, and furniture to the value of $1,500, all of

which was conveyed to the daughter in satisfaction of what they estimated to be her interest in her father's estate.

"I shall not undertake to analyze the evidence for the purpose of ascertaining what would have been due to the daughter on a strict accounting, because, in my judgment, the transfer of the mother's interest in the real estate last referred to, and also in the furniture, was contrived and carried out for the purpose of hindering and delaying Elizabeth O'Brien, the creditor of the mother, in the collection of her debt. The grantee has been above the age of twenty-one years for a long time, and, although she now testifies that she made repeated demands upon her mother to account, she never took any steps looking to that end until the mother was being pressed for the collection of a debt, whereupon the mother conveyed, and the daughter accepted, all of the property which the mother possessed, without, so far as this case shows, any accounting between them, and the only consideration which the daughter now sets up was an unadjusted claim, which, it was estimated, was more than the value of the property, and, although since that time the state of the alleged account has been reduced to figures, there was no proof that previous to, or at the time of, the conveyance there was any attempt to ascertain the true condition of their respective relations to the estate of the testator. But even if the amount due had been correctly ascertained, and the transfer made in consideration thereof, the fact that the daughter participated with the mother in procuring the transfers for the express purpose of hindering and delaying the principal and only creditor of the mother in the collection of her debt is sufficient to avoid the conveyance, even if given in satisfaction of an honest debt. That such was the purpose of the daughter is conclusively shown by a letter which the daughter wrote but a short time before the transfer to her attorney, Mr. Peterson, of which the following is important:

" 'I had suggested mother putting her property in my name, and then having herself declared bankrupt. In that case, if she were forced to pay the notes, she would be exempt. would she not? I wish you would advise me of the wisdom of this.'

"This letter plainly disclosed that the daughter had suggested to her mother the putting of the title of her property in the daughter's name to avoid the payment of the notes held by Elizabeth O'Brien. There was no pretence that the property was to be conveyed in satisfaction of any debt. On the contrary, it plainly disclosed a scheme by which the property was to be put beyond the reach of the creditor and of bankruptcy proceedings, and could have had no object other than preventing the creditor, then pressing her claim, from obtaining satisfaction out of the property which the mother had held in her own name for a great many years, upon the strength of which she had undoubtedly obtained credit. It was a bald declaration of a fraudulent purpose, which was subsequently carried out, and the parties should not be permitted to enjoy its benefits.

"I will advise a decree declaring void the transfer so far as the mother's interest in the property is concerned, subject to the mortgages on the lands when transferred, and also requiring the defendant Annie E. Travers to account for $1,500, the admitted value of the furniture. It appeared during the trial that one of the buildings had been destroyed by fire since the conveyance, and that the defendant Annie E. Travers has collected the insurance. Of this sum she will be decreed to pay one-third to the complainant as representing her mother's interest therein."

*Messrs. Wilson, Carr & Stackhouse,* for Parker.

*Mr. Frank Durand* and *Mr. John H. Backes,* for Annie E. Travers.

The opinion of the court was delivered by

SWAYZE, J.

There are cross appeals in this case. As far as concerns the questions presented by the petitions of appeal, we agree with the views expressed by the vice-chancellor. Through inadvertence the decree fails to follow the opinion in some respects, and in others seems to require explanation.

1. It decrees that the deed conveying lots 4, 5, 289 and 290

be set aside, annulled, and made void. The opinion makes it clear that it is only void as to the equal undivided one-third of Sophie V. O'Brien. The deed is not printed in the record, but it seems to have conveyed only the undivided interest of Sophie V. O'Brien. Although she had on the face of the earlier deeds a paper title to the whole, it is clear that in equity she was trustee as to two-thirds for Annie E. Travers, even if the conveyances by which the title was conveyed to her in 1888 were efficacious to pass the legal title. If they were not efficacious for that purpose, Mrs. O'Brien had a legal title to one-third only. We regard the deed of January 24th, 1905, as conveying only one-third, and with this explanation, the decree in this respect is affirmed.

2. The decree adjudges that the complainant is entitled to one-third of $11,000, moneys collected by Miss Travers for insurance on the buildings that were destroyed by fire, and fixes the amount with interest at $3,710. The bill charges and the answer admits that she received (after paying mortgage liens amounting to $4,630, for which a part of the insurance policies had been pledged as collateral security), the sum of $6,370. She should be charged only with one-third of this amount. The mistake in the decree is not cured by the fact that the deed is set aside, subject to the lien of all valid mortgages existing at the time of the conveyance; the mortgage in question seems to have been satisfied and the decree does not attempt to reinstate it, but in so many words adjudges a money liability against Miss Travers for an amount which makes no allowance for what was paid on the mortgage. This mistake requires a reversal of the decree upon the appeal of Annie E. Travers.

3. The decree adjudges that the complainant have a lien, for the amount found due, upon the interest of Annie E. Travers in the land. Her counsel argues that such a lien is not authorized, but in the reasons for reversal stated at the conclusion of her petition of appeal, no such reason is assigned. We think, therefore, that we should not disturb the decree in this respect.

4. The complainant urges that the amount charged against Miss Travers for the value of the furniture is less than its value

as conceded in the answer. We think it unnecessary to consider this question, since the complainant does not appeal from this part of the decree.

Sophie V. O'Brien's rights do not seem to be affected by the decree, except as to the costs. The controversy was between the complainant and the defendant Travers. Since the complainant prevailed in setting aside the conveyance made by Mrs. O'Brien, he was entitled to costs. The decree, so far as it is involved in her appeal, should be affirmed. The same result follows so far as the complainant's appeal is concerned.

Miss Travers has been obliged to come to this court to correct the decree, and she should have costs on the appeal, including the costs of printing. The complainant is entitled to costs in the court of chancery as the decree adjudged.

On appeal of Annie E. Travers:

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.

On appeal of Sophie V. O'Brien:

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.

*For reversal*—None.

On appeal of Edmund J. Parker, trustee:

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.

*For reversal*—None.