### HOLDEN v. CIRCLEVILLE LIGHT & POWER CO.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1914.)

No. 2449.

1. COURTS (§ 367*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

In a suit in a federal court involving the title to real property, if the question is balanced with doubt, the court will incline to an agreement with a decision of the highest court of the state bearing upon it, although it may not be such as to create a rule of property.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 439*)—RULES FOR CONSTRUCTION—INTENT OF TESTATOR.

The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

3. TRUSTS (§ 191*)—CONSTRUCTION OF TESTAMENTARY TRUST—POWER OF SALE.

No technical or express words are necessary in a will to create a power of sale, but if the intention is apparent such power will be implied, and it may be inferred from the general tenor of the instrument, or from the fact that a trustee is empowered and directed to do certain things, to which the sale of the trust property is necessarily a condition precedent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 243; Dec. Dig. § 191.*]

4. TRUSTS (§ 191*)—CONSTRUCTION OF TESTAMENTARY TRUST—POWER OF SALE.

Where a suit to recover property conveyed by a testamentary trustee was not commenced until nearly 50 years after the conveyance was made, during which time the purchaser and its successor had acquired rights by the making of improvements and otherwise in reliance on the validity of the conveyance, such facts may properly incline the court, in case of doubtful language in the will, to a construction which will sustain the power of the trustee to convey.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 243; Dec. Dig. § 191.*]

5. TRUSTS (§ 200*)—CONVEYANCE OF PROPERTY BY TRUSTEE—CONSTRUCTION.

Where a grantor had apparently no title to the land conveyed, except by virtue of a will creating a testamentary trust in such grantor, the presumption is justified that the deed was made in reliance upon the power conferred thereby, although such power is not invoked nor expressly mentioned in the deed.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 267-269; Dec. Dig. § 200.*]

6. TRUSTS (§ 202*)—SALE OF PROPERTY BY TRUSTEE—RIGHTS OF PURCHASER—APPLICATION OF PROCEEDS.

A bona fide purchaser from a trustee empowered to sell, who pays the purchase money, is not required to look to its application.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 271, 272; Dec. Dig. § 202.*]

7. COURTS (§ 342*) — FEDERAL COURTS — EQUITABLE DEFENSE TO ACTION AT LAW.

Under the federal practice, facts which might raise an equitable estoppel do not constitute a defense to an action at law for the recovery of real estate.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. § 342.*

Equitable defenses in actions at law, see note to Standard Portland Cement Corp. v. Evans, 125 C. C. A. 5.]

8. WILLS (§ 672*)—TESTAMENTARY TRUST—POWER OF TRUSTEE TO SELL PROPERTY.

A testator devised and bequeathed all of his residuary estate to his widow for life, and provided that all of the property remaining at the time of her death "shall constitute a fund for the support and maintenance of my daughter * * * and her children during her life, and at the death of my said daughter * * * the same shall be equally divided between her children." There was a further provision that, should the daughter's husband die or become incapacitated during the widow's

life, the daughter should have the use of a house and grounds free of rent. The property consisted largely of unproductive real estate. *Held*, following a decision of the Supreme Court of the state in a suit between other parties, that the fund created by the property remaining at the death of the widow included all the property, real and personal, and that both principal and income were charged with the support and maintenance of the daughter and her children during her lifetime, including the reasonable education of her children; also that to that end, which was clearly the paramount object of the testator, the daughter took a life estate subject to the trust, with an implied power to sell and convey real estate when she deemed it necessary.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1579–1581; Dec. Dig. § 672.*]

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Action at law by Martha Bierce Holden against the Circleville Light & Power Company. Judgment for defendant, and plaintiff brings error. Affirmed.

C. B. Matthews, of Cincinnati, Ohio, for plaintiff in error.

E. L. De Witt, of Columbus, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This action was brought to recover possession of a six-ninths interest in certain premises in Circleville, Ohio, of which plaintiff claimed to be the owner in fee. The case was tried without a jury, and judgment rendered for defendant. The testimony has not been sent up. From the findings of fact made by the trial judge we condense the following as a sufficient statement for present purposes:

Isaac Darst died testate in the year 1844, leaving a widow, and without issue, except one daughter, who was then married. His will, which was duly probated, after providing for the application to the payment of his debts of his moneys and credits, such part of his personal effects as his widow should not wish to retain, and, so far as necessary, his least productive real estate (which the executor was authorized to sell), contained the following provision:

"I further will and bequeath to my wife, Martha Darst, all the rest and residue of my estate, real and personal, to be used and kept by her during her lifetime, and

"I further will and direct that after the death of my wife Martha, all the property then remaining shall constitute a fund for the support and maintenance of my daughter, Ann Bierce, and her children during her life, and at the death of my said daughter Ann the same shall be equally divided between her children. I would further provide and direct that should my daughter Ann become a widow or should her husband, W. W. Bierce, by sickness or otherwise become disabled from doing business and supporting his family during the lifetime of my wife, she, my said daughter, shall have the use and occupancy of the house she now occupies with the privilege of a small garden on lot No. 11 in the town of Circleville, free of charge."

Then followed a provision that, in the event of the death of his daughter without living children, his property "shall then be divided

between" certain of the testator's nieces. The widow died in 1855. In December 1860, the daughter, who then had nine living children, joined with her husband in conveying by warranty deed to the Circleville Gas, Light & Coke Company (hereafter called the Coke Company) the entire of the premises in question, together with other property.

In February, 1864 (more than three years after the conveyance to the Coke Company), Mrs. Bierce applied to the appropriate common pleas court of Ohio by petition, alleging the necessity of selling certain other real estate "in order to support said petitioner and her children," stating that "doubts have arisen as to whether your petitioner is entitled to a fee simple or life estate in the said lands, and your petitioner, being desirous of selling said lands, is not able to do so on account of apprehension in the minds of some persons as to the title," praying a construction of the will, and a determination "whether she may under any circumstances, and, if so, under what circumstances, sell said lands in fee simple, and that the court may order the same to be sold." Plaintiff formally consented to the sale asked for. Apparently in connection with this proceeding, plaintiff and another of Mrs. Bierce's children voluntarily quitclaimed to the Coke Company all their interest in the premises here in controversy. The common pleas court held that the will authorized "petitioner, as trustee for herself and her children, and in the event of its being necessary to the support of herself and children, to sell said premises," found that such sale was necessary for the purpose stated, and accordingly directed petitioner and her husband to make the sale.

Proceedings to review this judgment were taken in 1879, when the youngest of Mrs. Bierce's children attained majority. The Supreme Court of Ohio affirmed the judgment of the common pleas court, holding that the "fund" composed of the property remaining at the widow's death was "charged with the support and maintenance of Ann and her children as its primary object," and that "if the income proved insufficient the principal could be resorted to for proper support." Bierce v. Bierce, 41 Ohio St. 241.

Mrs. Bierce died in 1901, her husband having died in 1893. In 1909 the six children who had not quitclaimed to the Coke Company in 1863 and 1864, quitclaimed all their interest in the premises in controversy to the plaintiff, who thereupon instituted this suit against defendant in error, which had, in 1891, succeeded by purchase to the interests of the Coke Company.

Plaintiff contends that Mrs. Bierce took at her mother's death only a life estate in the property then remaining, with remainder in fee to her children, and that her deed to the Coke Company thus merely conveyed her life estate, which terminated in 1901. Defendant contends that the property remaining at the death of the testator's widow constituted a trust fund, of which, not only the income, but the principal, so far as necessary, was charged with the support and maintenance of Mrs. Bierce and her children (including the education of the children) during the lifetime of Mrs. Bierce, that the latter was made trustee of this fund, with power to sell the real estate belonging thereto, so far as necessary, for such support and maintenance, that necessity for such sale existed, and that the title accordingly passed thereunder.

The decision in Bierce v. Bierce is invoked as an adjudication of defendant's construction of the will. Plaintiff denies the binding effect of this decision, and insists that, even if it be .followed, plaintiff is still entitled to recover, because the sale here in question was not, as in Bierce v. Bierce, under order of court. That decision, as applied to the controversy before us, determined only that the principal of, as well as the income from, the fund composed of the property remaining at Mrs. Darst's death was charged with the support and maintenance of Mrs. Bierce and her children. It did not determine that Mrs. Bierce was the trustee of this fund, with power to dispose of its principal without previous authority of court; for, although there are expressions in the opinion smacking of this view, not only was that question not involved, because the lower court had authorized the conveyance in question, but the proposition is not mentioned in the headnotes, which, under the rule in Ohio, alone expressed the actual decision of the court.

[1] Conceding that the decision in Bierce v. Bierce is not, strictly speaking, res judicata in defendant's favor, for the reason that neither it nor its property was before the court, yet, if that decision expresses the settled law of the state, it may be invoked by defendant in this cause as a rule of property; for, although pronounced after the sale by Mrs. Bierce to the Coke Company, it was rendered before the purchase from that company by defendant, who will be presumed to have bought in reliance upon it. We find nothing in the Ohio decisions which should cause us to reject the decision as stating the settled law of the state. But, regardless of whether or not that decision created a rule of property, and regardless of whether made before the rights here involved accrued, it being the decision of the highest court of the state in which the lands are situated, we should lean to an agreement with it if the question is balanced with doubt. Kuhn v. Fairmount Coal Co., 215 U. S. 345, 360, 30 Sup. Ct. 140, 54 L. Ed. 228; Messinger v. Anderson, 225 U. S. 436, 445, 32 Sup. Ct. 739, 56 L. Ed. 1152. And see Rowe v. Hill, 215 Fed. 518, 132 C. C. A. 30, decided by this court May 15, 1914.

[2] Turning, then, to the question of the correct construction of the will: The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail. Finlay v. King, 3 Pet. 346, 377, 7 L. Ed. 701; Colton v. Colton, 127 U. S. 300, 309, 8 Sup. Ct. 1164, 32 L. Ed. 138; Carter v. Reddish, 32 Ohio St. 1; Foster v. Stevens, 146 Mich. 131, 135, 109 N. W. 265..

Plaintiff urges that the testator's intention that the land should not be sold is evidenced by the fact that the property was not directed to be "turned into" a fund, but to "constitute" a fund; by the use of the word "same" in referring to the division to be had at the daughter's death, which it is contended can only mean "the same property," which remained at the widow's death; by the failure to give the daughter the fee simple of the property; and by a supposed inconsistency between an inclusion of the real estate in the trust fund charged with the maintenance and the express devise to the daughter's children after their mother's death. But neither one nor all of these considerations

are necessarily controlling. The rules they invoke are aids only in determining the controlling question of intent, which must be arrived at from a consideration of all the terms of the will. It was said by Mr. Justice Miller [1] that "of all legal instruments wills are the most inartificial, and less to be governed in their construction by the settled use of technical legal terms"; and, as said by Mr. Justice Matthews,[2] "it is a question in each case of the reasonable interpretation of the words of the particular will, with a view of ascertaining through their meaning the testator's intention."

It is clear that the testator was chiefly solicitous that his daughter and her children be properly cared for so long as the daughter should live. This paramount solicitude is shown in the postponement of any division of the property until the daughter's death; in providing for her free use of the home in case of intervening necessity, even during her mother's lifetime, and though such use would lessen the income of the testator's widow from an estate largely unproductive and presumably so known to the testator; in the fact that the testator's property was to be "used and kept" by his widow during her lifetime, while at her death all the remaining property was to "constitute a fund" for the support and maintenance of the testator's daughter and her children during the daughter's lifetime; in the fact that there was not only no stated limitation of expenditure to income, but no express restriction of any kind as to the amount usable for the purposes stated —all considered in connection with the fact of the largely unproductive nature of the estate. We are by no means satisfied that the Supreme Court of Ohio, in the Bierce Case, erred in holding that the fund created by the property remaining at the death of the testator's widow included all the property, real and personal, and that not only the income, but its principal, so far as necessary, were charged with the support and maintenance of the daughter and her children, from the time of the widow's death to the decease of the daughter. We therefore accept the decision of that court. It is supported by Ladd v. Chase, 155 Mass. 417, 421, 29 N. E. 637; Parker v. Travers, 74 N. J. Eq. 812, 71 Atl. 612, and other cases. It logically follows that the term "maintenance" includes the reasonable education of the daughter's children. Patterson v. Read, 42 N. J. Eq. 621, 9 Atl. 579.

The question then arises whether Mrs. Bierce had the power, without the authority of court, to sell the real estate in question. It is conceded that she held an estate for life in all the property, real and personal, remaining at the death of her mother, the testator's widow. Indeed, unless she had such legal estate, with the sole right of possession during her lifetime, this action would be barred by the statute of limitations. Gen. Code Ohio 1910, § 11219. The case must be judged as if the will had made the conveyance of the life estate to Mrs. Bierce, and the remainder over to her children, expressly subject to a trust whereby the estate, both real and personal, remaining at the widow's death was chargeable, both principal and interest, with, and liable to be sold for, the support and maintenance of Mrs. Bierce and her chil-

[1] Clarke v. Boorman's Executors, 18 Wall. at page 502, 21 L. Ed. 904.
[2] Colton v. Colton, 127 U. S. at page 310, 8 Sup. Ct. 1164, 32 L. Ed. 138.

dren, but without in terms conferring power of sale upon Mrs. Bierce. For no technical language is necessary to the creation of a trust in a will (Colton v. Colton, 127 U. S. 300, 310, 8 Sup. Ct. 1164, 32 L. Ed. 138); and, subject to an exception which does not apply here, "wherever a person, by will, gives property, and points out the object, the property, and the way [it should] go, a trust is created." Inglis v. Sailors Snug Harbor, 3 Pet. at page 119, 7 L. Ed. 617. See, also, Hoxie v. Hoxie, 7 Paige (N. Y.) at page 192. If the power of sale was expressly or impliedly conferred upon Mrs. Bierce, no sanction of the court was necessary to a conveyance. Perry on Trusts (6th Ed.) § 476. The will obviously did not expressly confer the power to sell real estate. The specific question thus is whether such power is to be implied, as coupled with the life estate, and in view of the trust with which the entire fund was charged.

[3] No technical or express words are necessary in a will to create a power of sale. If the intention is apparent, such power will be implied. It may be inferred from the general tenor of the instrument, or from the fact that a trustee is empowered and directed to do certain things, of which the sale of trust property is necessarily a condition precedent. Farwell on Powers (2d Ed.) pp. 48, 546; 2 Perry on Trusts, § 501; Winston v. Jones, 6 Ala. 550, 554; 2 Beach on Trustees, § 450. And see 1 Lewin on Trusts, p. *434, and note (b). For example, if there is a general direction to sell, and it is not stated by whom the sale is to be made, the power of sale will be implied in the executor, trustee, or other person, as the case may be, by whom the proceeds of the sale are to be applied. 2 Perry on Trusts (6th Ed.) § 501, and notes; Tylden v. Hyde, 2 Sim. & Stuart, 238, 241. But this rule is not limited to cases of express direction to sell.

In Going v. Emery, 16 Pick. (Mass.) 107, 111 (26 Am. Dec. 645), a direction to the executor to collect the residue of the testator's property, real and personal, "as soon as can be done consistently without sacrificing too much by forcing the sale thereof in an improper manner," and to pay over the proceeds to certain persons named for religious purposes, was held to create a power in the executor to sell real estate in order to carry into effect the other purposes of the devise, although the legal title was not in terms conveyed to any one. In Shaw v. Hussey, 41 Me. 495, the testator gave to his wife all his property, real and personal, "during her natural life." In a later item he directed that at his wife's death all his "real estate, that may remain unexpended by her, be divided in equal shares between" certain persons. It was held that the wife took a devise for life, with the power of sale of real estate, as implied in the words "that may remain unexpended by her." In McGuire v. Gallagher, 99 Me. 334, 59 Atl. 445, the testator's property was devised to his widow "during her life," "to be used by her according to her desire," with direction that after her death "all the property remaining" be divided among certain persons. It was held that the wife took a life estate in the entire property, with an implied power of sale of any or all of it, both real and personal, with the right to use the proceeds for her support and comfort as she might desire.

In Newlin v. Phillips (Del.) 60 Atl. 1068, all the testator's property, real and personal, was given to his widow, "to hold, to keep, and en-

joy for her own use and benefit, to be free from the control or inter-
ference of any person or persons whatever," with the expressed desire
that she should "carefully husband and keep intact as nearly as possible
the estate, in order that the revenues therefrom may give her a com-
fortable and sufficient livelihood for the remainder of her life," with
directions that "such as may be remaining thereof" be at her death
divided in a certain manner.  It was held that the wife took merely
a life estate, with the implied power, if she should find the income in-
sufficient, to dispose of such part of the estate as might be necessary
for that purpose.  In Silvers v. Canary, 109 Ind. 267, 9 N. E. 904, a
devise to a wife of certain real and personal property for life, with
directions that what should not be consumed at her death should be
divided among the testator's children, was held to give the wife the
power to convey the fee in the land.

Adopting, as we do, the construction that the testator intended his
real estate to be sold, so far as necessary, for the support and main-
tenance of his daughter and her children during the daughter's life,
an implied power in the daughter to sell would seem, under the author-
ities cited, to be justified, provided the testator intended that his daugh-
ter should determine the necessity of sale, and should herself disburse
the proceeds thereof for her own and her children's support.  There
are some decisions out of harmony with this rule, but we have found
none of controlling authority.  The District Judge, in his opinion on
final hearing, said:

"The will imposed no restriction on the daughter as to her expenditures
for the support and maintenance of herself and children.  The amount rested
in her discretion, confidence in which is shown by the testator in his failure
to exact a bond of her for the preservation of the estate and to require an
accounting by her to some appropriate court.  She was, in law, authorized to
expend such a sum as persons stationed and circumstanced in life as she
and her children were ought reasonably to have for support and mainte-
nance."

If the construction we have adopted as to the general purpose and
intent of the will is the correct one, the view of the District Judge quot-
ed does not seem far-fetched.

[4] The validity of the conveyance in question was not directly at-
tacked until more than 49 years after the sale was made, and not until
30 years after the decision of the Supreme Court of Ohio in Bierce v.
Bierce.  It is not improbable that during this long period defendant or
its grantors have acquired rights, by way of improvements or other-
wise, in reliance upon the sale.  While these considerations do not
afford a defense to this action, they "may properly incline a court, in
the case of doubtful language in the will, to a construction of it that
will validate the deeds and the exercise of the power, by which alone
they can be supported." [3]

The case has been argued here as if Mrs. Bierce's children were all
minors when the sale was made.  We think the District Judge was
justified in inferring that the circumstances of the family were such
as to make the sale and the use of the principal or its proceeds neces-

[3] Language of Judge Taft in Smith v. McIntyre (C. C. A., 6th Cir.) 95 Fed.
at page 588, 37 C. C. A. 177.

216 F.—32

sary to the support and maintenance of Mrs. Bierce and her children, including the latter's education. As this proposition is not challenged in brief or argument of plaintiff, we content ourselves with stating it without elaboration, beyond saying that, in our opinion, plaintiff's voluntary conveyance to the Coke Company of her interest in the premises upon her attaining legal majority, especially as made in connection with her formal assent to the further sale of real estate for the support of the testator's daughter and her children, is a more or less cogent admission that the circumstances justified the sale made nearly four years earlier.

[5] As neither Mrs. Bierce nor her husband had apparently any title to the land in question, except by virtue of the will, the presumption is justified that the deed was made in reliance upon the power conferred thereby, although such power is not expressly invoked or mentioned in the deed. Warner v. Conn. Mutual Life Ins. Co., 109 U. S. 357, 365, 3 Sup. Ct. 221, 27 L. Ed. 962; Smith v. McIntyre, 95 Fed. at page 591, 37 C. C. A. 177; Bishop v. Remple, 11 Ohio St. 277, 281; 2 Perry on Trusts, § 511c and note (a).

[6] There is nothing in the record to impugn the good faith of the Coke Company, and a bona fide purchaser who pays the purchase money to one empowered to sell is not required to look to its application. Potter v. Gardner, 12 Wheat. 498, 502, 6 L. Ed. 706.

[7] Plaintiff's purchase under which she claims in this suit is purely speculative, and the record suggests a question of equitable estoppel. But under the federal practice, such estoppel is not a defense to a suit at law for the recovery of real estate. Foster v. Mora, 98 U. S. 425, 25 L. Ed. 191; Johnson v. Christian, 128 U. S. 374, 382, 9 Sup. Ct. 87, 32 L. Ed. 412; Langdon v. Sherwood, 124 U. S. 74, 84, 8 Sup. Ct. 429, 31 L. Ed. 344; Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059; Highland Boy Gold Mining Co. v. Strickley (C. C. A., 8th Cir.) 116 Fed. 852, 854, 54 C. C. A. 186; Davis v. Davis (C. C. A., 5th Cir.) 72 Fed. 81, 83, 18 C. C. A. 438.

[8] We therefore have not, in determining the rights of the parties in this suit, taken this question into account. The important question of the existence of the power of sale, necessary to sustain the deed before us, is not by any means free from difficulty. But having in mind the deference due to the construction of the will, so far as made, by the Supreme Court of Ohio more than 30 years ago, our duty, in view of the long delay in attacking the conveyance in question, to incline to such construction of doubtful language affecting the question of implied power of sale as will validate the deed, the actual decision of the common pleas court, the facts found by the District Judge and his carefully considered opinion, together with the broad general rule that we should not reverse a judgment unless the record gives rise to a clear conviction of error (Chicago Junction Ry. Co. v. King, 222 U. S. 222, 32 Sup. Ct. 79, 56 L. Ed. 173; Seaboard Air Line v. Moore, 228 U. S. 433, 435, 33 Sup. Ct. 580, 57 L. Ed. 907; L. & N. Ry. Co. v. Lankford [C. C. A., 6th Cir.] 209 Fed. 321, 325, 126 C. C. A. 247), which conviction does not here exist, we are constrained to accept the conclusion of the District Court, and so to affirm its judgment.