MARY C. HOGAN *et al. vs.* BRIDGET TAYLOR *et al.*

MAY 9, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This cause was begun by a bill in equity filed by the two administrators, with will and codicil annexed, of the estate of John A. Phelan, late of the city of Woonsocket, Rhode Island, deceased. The respondents are all the known heirs of the testator and all other possible unknown heirs of his, and also Our Lady of Victory Hospital of Lackawanna, which is a corporation of the state of New York and sole beneficiary under the aforesaid codicil, and which is hereinafter referred to as the respondent corporation. The prayer of the bill is that the will and codicil be construed and that the complainants and administrators be instructed as to certain questions, the answers to which depend upon the construction of these instruments and which we need not here state.

The respondent corporation and the known heirs of the testator, all of whom are of full age, filed answers admitting all the allegations of the bill and joining in its prayer for the construction of the will and for instructions to the complainants with regard thereto. Notice was given, by publication, to all possible unknown heirs of the testator, and a member of the bar of this state was appointed to represent their possible interests. He filed an answer substantially in the usual form for such a representative or guardian *ad litem,* neither admitting nor denying the allegations of the bill.

The cause was then heard before the presiding justice of the superior court on the bill and answers; and evidence was

presented. When it was ready for hearing for final decree, it was certified to this court for final determination in accordance with general laws 1938, chapter 545, § 7. There is no contradiction in the evidence, and the material facts shown are as follows:

On September 8, 1926, the said John A. Phelan and his sister Bridget E. Phelan, neither of whom was ever married, executed separate wills. In his will he simply named her as executrix, directed her to pay all his debts, funeral expenses and expenses of his last illness, and gave her all the residue of his estate, real, personal and mixed. Her will had exactly similar provisions in his favor.

On the same day and evidently after the execution of these wills John A. Phelan executed, before subscribing witnesses, one of whom was this sister, an instrument in handwriting and reading as follows, evidently intended as a codicil, though not in any way described therein as such: "It is also my will that after my death that all monies that is left in banks and obtained from the sale of property both personal and real belonging to me be given to our Lady of Victory home for Masses for myself and the other deceased members of my family."

The sister died on June 5, 1935, and her above-described will was duly admitted to probate. John A. Phelan died July 1, 1935, and his above-described will and codicil were duly admitted to probate. The complainants were duly appointed administrators of her estate with her will annexed and were also duly appointed administrators of his estate with his will and codicil annexed. They duly qualified in both capacities.

Because of the prior death of the sister, the property of John A. Phelan at his death included the residue of her estate. Altogether it comprised several bank accounts, aggregating a considerable amount, some corporate securi-

ties and other personal property and several pieces of real estate located in this state and in Massachusetts.

The respondent corporation was, by evidence, duly identified as the beneficiary intended by the testator, John A. Phelan, hereinafter exclusively referred to as the testator, as his sole beneficiary under the codicil to his will. That respondent and the respondents who are all the *known* heirs of the testator have come to some agreement as to the disposition of the residue of the property real and personal belonging to him or to which he was entitled at the time of his death. They have, therefore, made before us, by their respective counsel, substantially the same contentions and supported them by very similar arguments.

These contentions, if sustained by us, would result in the conclusion that the respondent corporation is entitled to the benefit of the entire net estate of the testator and that his heirs and next of kin are entitled to no benefit from the estate. In this situation, justice requires that the interests of possible *unknown* heirs and next of kin be thoroughly protected; and we are pleased to observe that such interests have been very well represented and protected before us by the attorney appointed to represent them. We have not been able to think of any contention or argument in their behalf which he has not well presented to us.

He has contended that the sole purpose of the testator in his codicil was to give to the respondent corporation money to be obtained by the testator from the sale of real and personal property of his and to be deposited, during his lifetime, in a separate bank account for the ultimate benefit of the respondent corporation, something which apparently was never done. But the very fact that nothing of the sort was done by him in his lifetime, though he lived for nearly nine years after his will and codicil were executed, indicates fairly clearly that he had no such purpose in executing this codicil.

It also seems to us that such a purpose would have been rather inconsistent with the execution, earlier on the same day, of the two wills which this testator and his sister made and in which each of them gave all of his or her property to the other, after payment of debts and expenses. It also seems to us rather unlikely that he would have wished thus to leave money for masses for himself and the other deceased members of his family, if his sister should survive him; but that it is more likely that he would, in view of that contingency, leave it to her to provide for such masses.

The representative of unknown heirs has also contended that the language of the codicil should be construed literally; and that if so construed, it must mean that all the money to be received by the respondent corporation must answer the double description that it must at his death be on deposit in a bank or banks and that it must have been obtained from the sale *in his lifetime* of real or personal property or both, belonging to him.

There is considerable force in this contention; but after careful consideration we are of the opinion that it should not be sustained. If the construction thus contended for should be adopted, the result would be that the testator died intestate as to all his property and that his obvious intent to provide by his codicil for masses for himself and other deceased members of his family, at any rate if he should survive his sister, would be wholly defeated.

Following a well-established, general rule as to the construction of wills, this court has repeatedly held that such a construction as will result in complete or partial intestacy should be avoided, if there is any other reasonable construction which will not produce that result. See *Pell* v. *Mercer,* 14 R. I. 412, at 427; *Dunham* v. *Randall,* 51 R. I. 55, at 56, 151 A. 193, at 194; *Edwards* v. *Martin,* 54 R. I. 64, 169 A. 751, at 752.

Moreover, such a result, *i. e.*, complete or partial intestacy, would be probable, at the time when the testator executed this codicil, unless he should make special provision afterwards by selling all or part of his real and personal property and depositing the proceeds in a special bank account or accounts, which could be identified as having been made with money thus obtained.

In case of a question as to the proper construction of ambiguous language in a will, the intention of the testator in making it may be sought by a scrutiny of the whole will and a consideration of the circumstances under which it was made; and a will and codicil should be taken and construed in connection with each other. *Bliven* v. *Borden*, 56 R. I. 283, at 288, 306, 185 A. 239, at 242; *Billings* v. *Gladding*, 58 R. I. 218, at 220, 192 A. 216, at 217.

In construing this codicil, it should be kept in mind that, although the two *wills* were typewritten and were drawn by a lawyer, who was one of the witnesses to each of them, the *codicil* was in handwriting, and that it is quite evident that it was written without any legal advice and by a man who was not trained in the precise use of language. It seems to us much more reasonable to believe, under the circumstances, and especially as the codicil begins with "It is also my wish", that in the codicil he did not intend to cut down, at all, the provision which he had made for his sister in his will and which she could only enjoy if she survived him; but only intended to have the codicil take effect if he survived her, and then to have the benefit of all his net estate go to the respondent corporation, but in the form of money, since it was a corporation located a considerable distance away in another state.

In view of all these considerations it is our opinion that the codicil should be construed, in a way which seems to us reasonable, as if, following the words "after my death", it had read as follows, "that in case I survive my sister, all

moneys that are left in banks and all moneys that shall be obtained from the sale of property both personal and real belonging to me at my death be given to Our Lady of Victory Hospital of Lackawanna", *etc.*

Reading in this sense the language quoted from the codicil, the conclusion would naturally and reasonably follow that the testator intended that in case his sister should pre-decease him, the administrator or administrators of his estate should convert into money all property, real and personal, belonging to him at the time of his death and not already in the form of bank deposits and, after making the payments provided for in the second clause of his will, should pay the residue of his estate, in the form of money, to the charitable and religious corporation located in Lackawanna, New York.

Under this construction, which we adopt, of the will and codicil, the administrators, in our opinion, have, by clear implication from the language of the will and codicil, not only a *power*, but also a *duty*, to thus convert into money the residue of the testator's estate, not already in bank deposits, and to pay such money and bank deposits to the respondent corporation for the purpose stated in the codicil. *Holden* v. *Circleville Light & Power Co.*, 216 Fed. 490, at 496; 2 Woerner, American Law of Administration (3d ed.) 1129; 2 Page, Wills (2d ed.) 1971, § 1180; 11 R. C. L. 398, § § 479, 480.

The only question which remains for determination is whether the respondent corporation may make a valid election to receive in its present form any part of the residue of the estate which is not already in the form of money or bank deposits. From an examination of authorities on the subject, we are of the opinion that it may make such an election. *Craig* v. *Leslie*, 3 Wheat. 563, at 578; *Doyle* v. *Blake*, 77 N. J. Eq. 142, at 143, 77 A. 347, at 348; *Prentice* v. *Janssen*, 79 N. Y. 478, at 485; 6 R. C. L. 1090, § 22; 2 Page, Wills (2d ed.) 1995, § 1197.

The rule is well stated in the last of the above citations, as follows: "Where a power of sale or conversion is given for the benefit of certain designated persons, such persons may, at their election, take the property in specie, where the rights of others will not be interfered with."

Just what effect our conclusions will have upon the title and disposition of the real estate belonging to the testator at the time of his death and located in Massachusetts is not for us to determine.

In view of the definite conclusions which we have made and have stated in this opinion, we do not deem it necessary or desirable to incorporate herein specific answers to the specific questions set forth in the bill of complaint. So far as necessary or desirable they may be set forth in the decree to be entered in this cause.

The parties may, on May 20, 1940, present to this court a form of decree to be entered in the superior court.

*Stephen J. Casey,* for complainants.

*Hogan & Hogan, John J. Mee,* for respondents.

*Fred J. O'Donnell,* guardian *ad litem.*