## LOUISVILLE & N. R. CO. v. LANKFORD.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1913.)

No. 2,365.

**1. MASTER AND SERVANT (§ 286\*)—DEATH OF SERVANT—RAILROADS—OPERATION —NEGLIGENCE.**

Where defendant fell from the pilot of a railroad engine being used in switching operations and was killed, and it was shown that a switch engine with a front footboard instead of a pilot would have been more safe, and that the change on the engine in question could have been readily made, but that the road engine was used for switching for a considerable period prior to the accident, whether defendant was negligent in so using it was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.\*]

**2. MASTER AND SERVANT (§ 288\*)—DEATH OF SERVANT—RAILROADS—OPERATION —ASSUMED RISK—QUESTION FOR JURY.**

Where decedent, a switchman, was jarred from the narrow rim of the pilot of a road engine at night while it was being used for switching, resulting in his death, whether he assumed the risk of riding thereon under such circumstances was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.\*

Assumption of risk incident to employment, see note to 38 C. C. A. 314.]

**3. NEGLIGENCE (§ 101\*)—DEATH OF SERVANT—EMPLOYERS' LIABILITY ACT—INSTRUCTIONS.**

In an action under the Employers' Liability Act for the death of a switchman by being jarred from the pilot of a road engine being used for

---

switching purposes, a request to charge that decedent's act in riding on the pilot with knowledge of the apparent and obvious danger, and without necessity, should imperatively reduce the damages to a nominal sum was properly refused, since, under the express provisions of the act, the damages recoverable in case of decedent's negligence bear the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164; Dec. Dig. § 101.*]

4. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—RAILROADS—OPERATION —DEFECTIVE TRACK—NEGLIGENCE—QUESTION FOR JURY.

In an action for the death of a switchman by being jarred from the rim of the pilot of a road engine used for switching, evidence *held* to require submission to the jury of the question whether defendant was negligent in permitting low places in the track which the jury might find was the cause of a lurch of the engine which caused decedent to fall.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

In Error to the District Court of the United States for the Western District of Tennessee; J. E. McCall, Judge.

Action by Ike Lankford, as administrator of the estate of Robert McClure, deceased, against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Jno. B. Keeble, of Nashville, Tenn. (W. W. Farabough, of Memphis, Tenn., of counsel), for plaintiff in error.

Sweeney & Sweeney, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. On the night of December 6, 1910, the intestate, while employed in defendant's railroad yards at Paris, Tenn., as a switchman, in making up an interstate train was run over by the engine in use for such switching. When last seen before the accident he had just set the switch, which was on the left-hand, or fireman's side of the engine and was apparently proceeding to cross the track 5 or 6 feet in front of the engine. He was found about 15 or 20 feet further up the track, just outside the left-hand rail, one foot cut off and his body badly crushed. It was plaintiff's theory, stated in the declaration and relied upon at the trial, that deceased stepped upon the pilot and was thrown therefrom through a lurch caused by the engine passing over a "low joint" in the track. The engineer and another witness testified that decedent told them that in trying to turn on the pilot he slipped and fell off. He died within an hour after the accident. The grounds of defendant's negligence relied on, as far as submitted to the jury, were the use for switching purposes of a road engine carrying a pilot, and without a front footboard, instead of a switch engine, which has a front footboard and no pilot, and an out-of-repair and unsafe condition of the track. The defenses were a denial of negligence on defendant's part and assumption of risk and contributory negligence on the part of deceased. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

suit was brought under the Employers' Liability Act.[1] At the close of the testimony defendant moved for peremptory instruction in its favor, which was denied, and the case submitted to the jury. Verdict was rendered for plaintiff, on which judgment was entered. The errors argued relate to the refusal to direct verdict, the denial of several requested instructions, and the submission of the alleged defective condition of the track as a ground of defendant's negligence; the criticism here being that there was no evidence tending to show either that the engine lurched or that there was any condition of the track which might have caused such lurching. It is not contended here that a maintaining of the track in the condition last stated would have no tendency to prove negligence.

[1] 1. The motion to direct verdict was properly denied. There was testimony tending to show negligence on defendant's part in using a road engine for switching purposes. There was evidence (including the construction of the pilot, referred to later) from which the jury might properly infer that decedent was expected to ride on the pilot during switching movements. Notwithstanding defendant's evidence to the contrary, a question of fact for the jury was presented. There was evidence that a road engine was less safe for this purpose than a switch engine, because of the lack of front footboard, the pilot having no foot room except a narrow "rim" perhaps $3\frac{3}{4}$ inches wide, which was less secure than a footboard; that defendant had then and there shops at which the road engine could have been properly equipped for switching purposes by taking off the pilot and putting on a front footboard, which required not more than one to two hours at the most; and that the road engine had been in use for switching purposes at least part of the preceding night, all of the day before the accident, and from 7 o'clock in the evening until the accident, which occurred about midnight. The effect (upon the motion to direct verdict) of the alleged failure to prove that a defect in the condition of the track contributed to the accident need not be considered, in view of what is said in a later portion of the opinion as to the proof on that subject.

[2] The defense of assumption of risk presented at least questions of fact for the jury. Texas & Pacific R. R. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Sterling Paper Co. v. Hamel (C. C. A. 6th Cir.) 207 Fed. 300, 304. It is conceded that, if plaintiff has a right of action, the suit is properly brought under the Employers' Liability Act, by which the defense of contributory negligence as a complete bar is abrogated. The question of such negligence as reducing recovery was submitted to the jury.

[3] 2. If the record justified submitting the condition of the roadbed as a ground of negligence, it follows that the judgment must be affirmed. This is so as to the defense of assumption of risk, because the requests upon that subject (assignments 8, 9, 10, and 15) ignore the condition of the track and make decedent's acquaintance with the condition of the engine and its use bar recovery. An assumption of risk as to the engine obviously would not have the effect stated, provided other negligence, not assumed, proximately contributed to the

---

[1] Act April 22, 1908. c. 149. 35 Stat. 65. amended by Act April 5, 1910, c. 143, § 2, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1325).

accident. Request No. 5 was properly denied. It not only ignored the condition of the roadbed as a ground of negligence but made riding on the pilot, with knowledge of apparent and obvious danger, and without necessity, imperatively reduce the damages to a nominal sum, in contravention of the terms of the Employers' Liability Act, which makes the damages recoverable by the employé bear "the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both." Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 122, 33 Sup. Ct. 654, 57 L. Ed. 1096. Request No. 7 is not only subject to the same criticism of ignoring the condition of the roadbed as contributing to the accident but, so far as applicable, was in effect covered by the charge actually given.

[4] We are thus brought to the question whether there was evidence tending to show that the defective condition of the track proximately contributed to the injury. There was no testimony that the engine "lurched." There was, however, evidence to the effect that the track had been torn up, in the course of repairs, for a considerable distance, including the entire space from the switch mentioned to and including the place where the deceased fell; that the ties merely rested upon the ground, no ballasting having been done, the spaces between the ties being left entirely open. Defendant's counsel concedes that "the jury were warranted in finding that the track was not level nor filled in at the point where McClure stepped upon the engine and was thrown off." The engineer, who was a witness for defendant, in answer to a question, put upon cross-examination, whether he did not know that "it is customary to have low joints in tracks where there is no ballast, particularly in switching yards such as that track was," said, "Well, the low joints were there, but I could not say anything about this track for they had just repaired it just a short time before;" adding however, that the repairs were not completed. The jury might, we think, properly infer from all the evidence, taken together, that the inequalities mentioned had not been corrected.

Can it then be said that there was no evidence from which the jury was at liberty to infer that the unevenness of the track contributed to the accident? In other words, does the record support only a conclusion that the deceased would have slipped and fallen regardless of the unevenness of the track? The test of the propriety of submitting the condition of the track as a contributing cause of the accident is whether reasonable men would differ in the conclusion to be drawn in that respect from the evidence. C. & E. R. R. Co. v. Ponn (C. C. A. 6th Cir.) 191 Fed. at page 689, 112 C. C. A. 228, and cases cited. The testimony showed that the engine was running at but from one to two miles an hour when the accident occurred. There was testimony tending to show that the engine had a handhold accessible to one standing on the pilot rim, but not as conveniently effective as from the front footboard of a switch engine; also that the pilot rim was of metal, "hacked" or "punched," inferably for the purpose of roughening it, so as to make footing more secure. The mere fact that the spaces between the rails were not filled in is not alleged or shown to have contributed to the accident. The unevenness of the track (re-

sulting in an alleged lurch of the engine) is, however, claimed to have contributed to the decedent's fall; and while the proof of such fact may not be allowed to rest on mere conjecture, yet it is not essential that there be express testimony to that effect. It is enough if the testimony makes an inference more reasonable that the unevenness of the track contributed than otherwise; in other words, that such contribution is supported by the greater weight of probability. Louisville & Nashville R. R. Co. v. Bell (C. C. A. 6th Cir.) 206 Fed. 395, 398. For illustrative cases, see Felton v. Newport (C. C. A. 6th Cir.) 105 Fed. 332, 334, 44 C. C. A. 530; Pittsburgh, etc., Ry. Co. v. Scherer (C. C. A. 6th Cir.) 205 Fed. 356, 358. Assuming that the unevenness of the track was not shown to be such as to disturb the equilibrium of one securely standing, under usual conditions, on a footboard, it by no means follows that such unevenness would have no natural effect upon a precarious footing on a narrow metallic pilot rim, especially in view of the snowy condition of the ground from which the switchman must step. The question is largely one of probative effect. The force of given language of a witness frequently depends to a considerable degree upon emphasis placed upon different words. The trial judge, who saw and heard the witnesses, must have regarded the testimony as warranting a finding that the unevenness of the track contributed to the accident, for he not only disregarded the exception challenging such sufficiency but overruled the motion for new trial, which embraced, as one ground, the criticism we are discussing. We cannot say that the record gives "rise to a clear conviction" that error was committed in submitting the question of the condition of the track as a factor contributing to the accident. Chicago Junction Ry. Co. v. King, 222 U. S. 222, 32 Sup. Ct. 79, 56 L. Ed. 173; Seaboard Air Line v. Moore, 228 U. S. 433, 435, 33 Sup. Ct. 580, 57 L. Ed. 907.

The judgment of the district court is affirmed, with costs.