ROUSH v. BALTIMORE & O. R. CO.

(District Court, N. D. Ohio, E. D. May 19, 1917.)

No. 9472.

COMMERCE ⊙⟞27(5)—INTERSTATE COMMERCE—EMPLOYERS' LIABILITY.

An employé of an interstate railway company, engaged in operating a pumping station furnishing water indiscriminately and contemporaneously to locomotives engaged in interstate and intrastate commerce, is within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1916, §§ 8657–8665]), as the test is whether the employé at the time of the accident was engaged in interstate transportation, or in work so closely related thereto as to be practically a part thereof.

At Law. Action by Floyd Roush against the Baltimore & Ohio Railroad Company. On motion to remand. Motion granted.

Payer, Winch, Rogers & Minshall, of Cleveland, Ohio, for plaintiff.
Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This action was removed to this court from the court of common pleas, Cuyahoga county, on the ground of diversity of citizenship, and plaintiff now moves to remand on the ground that the cause of action stated in the petition is one arising under the federal Employers' Liability Act, relating to injuries sustained by employés of interstate carriers while engaged in interstate commerce, and therefore not removable under section 6 of the amendment to said act approved April 5, 1910 (36 Stat. 291, c. 143, § 1 [Comp. St. 1916, § 8662]).

From the petition it appears that the defendant was operating a system of steam railroads running through Cuyahoga county, Summit county, and Wayne county, Ohio, and other counties and states of the United States; that one of its lines runs from the city of Pittsburg to. the city of Chicago, through Warwick, in Summit and Wayne counties; that in connection with the line of railroad defendant owns and operates engines, cars, roundhouses, workshops and water tanks, and particularly a certain water tank, reservoir, and pumphouse near said village of Warwick, on said line of railroad; that said water tank, reservoir, and pumphouse was for the purpose of supplying water to its locomotives, operating on said line, and other purposes pertaining to the business of a common carrier engaged in interstate commerce; and that the defendant was at all times mentioned engaged in the business of interstate commerce, and plaintiff was likewise employed and engaged at the time he sustained the injuries described and complained of. The petition gives a. description of this pumphouse, showing its use in furnishing and supplying water for locomotives, and then states that it became necessary for the plaintiff, in the performance of his duties, to ascertain the depth of water in a cistern (which was a part of the pumping station), and that, on removing the hatch of said cistern, and while attempting to make an inspection of the state of the water therein, he was injured by an explosion of gas, which had accumulated in the cistern.

⊙⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The foregoing are all the allegations tending to show that the defendant was engaged in interstate business, and that plaintiff was, at the time he received his injuries, aiding or participating in an act of interstate commerce. If, upon these facts, the plaintiff was engaged or participating in the interstate business of the defendant, the motion to remand should be granted. If, on the other hand, it was not properly interstate business, then the removal on the ground of diversity of citizenship was proper, and the motion should be denied.

The solution of this inquiry depends on whether or not an employé engaged in operating a pumping station, which furnishes water to be used indiscriminately and contemporaneously for interstate and intrastate business, is within the federal Employers' Liability Act. The test is whether the plaintiff, at the time of the accident, was engaged in interstate transportation, or in work so closely related thereto as to be practically a part thereof. The several state courts of last resort, and the federal courts inferior to the United States Supreme Court, have differed widely in similar cases, and authority may be found supporting either side of the question. In view of this conflict, I rest my decision upon what I believe to be the rule practically settled by the decisions of the Supreme Court of the United States. Those most nearly in point are the following: Walsh v. New York, etc., R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Pedersen v. Delaware, etc., R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; St. Louis, etc., Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Delaware, etc., R. R. Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397; Shanks v. Delaware, etc., R. R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Chicago, etc., R. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; Minneapolis, etc., R. R. Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358.

In my opinion, the Pedersen Case is controlling. In it the injured employé was an iron worker employed by an interstate employer in the reconstruction, or alteration and repair, of railway bridges. He was engaged in carrying from a tool car to one of these bridges some bolts or rivets, which were to be used that night or early the next morning in repairing a bridge. The repairs consisted in taking out an existing girder and inserting a new one. This bridge was being regularly used in both interstate and intrastate commerce. It was held that he was within the terms of the act; in other words, that his work was so closely related to interstate transportation as to be practically a part thereof. Mr. Justice Van Devanter, delivering the opinion, says:

"Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference, so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and

efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But, independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined, regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? See McCall v. California, 136 U. S. 104, 109, 111 [10 Sup. Ct. 881, 34 L. Ed. 392]; Second Employers' Liability Cases, 223 U. S. 1 [32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44]; Zikos v. Oregon R. & Navigation Co. [C. C.] 179 Fed. 893, 897, 898; Central R. Co. of N. J. v. Colasurdo, 192 Fed. 901 [113 C. C. A. 379]; Darr v. Baltimore & O. R. Co. [D. C.] 197 Fed. 665; Northern Pacific Ry. Co. v. Maerkl, 198 Fed. 1 [117 C. C. A. 237]. Of course we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such. True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce. The point is made that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task, which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

Three justices dissented, but the case has frequently been referred to since by the same court with approval, and, although the scope to which its doctrine has been extended both before and since by state and federal tribunals, is not justified, as will appear from later United States Supreme Court decisions, to which reference will be made, the exact principle thus established is now well settled law. Roberts, in his excellent work entitled Injuries to Interstate Employés on Railroads, states the rule in section 27, thus established, as follows:

"Although an employé is at the time engaged in intrastate commerce as well as interstate commerce, as, for instance, an employé on a train hauling both kinds of commerce, or a carpenter repairing a bridge over which both kinds of commerce are carried, yet, if injured under such circumstances, he cannot take his choice of remedy under the state and federal law, for the courts hold that he is then engaged in interstate commerce, and the remedy given by the national act is exclusive."

In section 30 the same rule is restated and discussed at length as now being the established law. In section 40 is reviewed the cases in which it is held that employés assisting in the original construction of tracks, tunnels, bridges, engines or cars, which have never been used as instrumentalities of interstate commerce, are not employed in interstate com-

merce, within the meaning of the act. An examination of these cases will make clear the distinction between such employés, who are not engaged in interstate commerce, but are engaged in original construction, and employés who are held to be so engaged when employed in repairing, renewing, or inspecting instrumentalities which have been devoted to interstate commerce.

In sections 46 and 47, Roberts gives a list of cases adjudged prior to the decision by the United States Supreme Court of the Pedersen Case and others above cited, which he correctly says were decided wrong because in conflict with it. One or two of the later United States Supreme Court cases indicate that the doctrine of the Pedersen Case does not go as far as Mr. Roberts asserts, nor as far as some of the later or earlier cases of other tribunals have extended it.

I am of opinion that the present case is within the rule of the Pedersen Case. The pumping station was an instrumentality being used indiscriminately for interstate and intrastate commerce. The work being performed by the plaintiff was so closely related to interstate transportation as to be practically a part of it. He was not engaged in original or independent work too remotely connected with interstate transportation to be said not to be practically a part thereof. It is true, his work also was necessary in carrying on intrastate transportation; but when the efforts of the employé at the time he was injured may relate to either class of transportation, then he is within the Act, and his right of action is controlled by it. The later United States Supreme Court cases, upon which counsel rely as limiting the Pedersen Case, do not, in my opinion, have that effect.

The Yurkonis Case, supra, is one in which the employé was engaged in mining coal at a mine owned by the interstate carrier, and the coal, after it was mined, was to be used by the employer in its business as a common carrier in interstate commerce. It was held that the fact that the coal, after it was mined and transported, was thus to be used, did not make the operation of the mine or the work of the employé therein interstate commerce. Manifestly this is not inconsistent with the holding in Pedersen and other cases of like nature.

In the Shanks Case, supra, the employé was engaged, when injured, solely in taking down and putting up in a new location a heavy shop fixture in a machine shop of the interstate carrier, in which shop locomotives used in interstate transportation were from time to time repaired and rebuilt. These facts, it was held, did not make the employé's work so closely related to interstate transportation as to be practically a part of it. Applying the test, it was said that the injured employé was not employed, when injured, in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation, and that the connection between his work of removing a shop fixture and interstate transportation was too remote to permit the deduction that he was then engaged in interstate commerce, or in work so closely related to it as to be practically a part of it. This case cites the Pedersen Case with approval, and supports, it seems to me, the rule therein established.

In Railroad Co. v. Harrington, supra, the employé, when injured, was engaged in moving coal from storage tracks in a terminal yard to

coal chutes, where it might thereafter be used indiscriminately in intrastate and interstate service. This was held to be independent work, not closely enough related to interstate transportation as to be practically a part of it.

In Railroad Co. v. Winters, supra, the employé, when injured, was making repairs upon an engine which had been used in the hauling of freight trains which carried both intrastate and interstate commerce. Mr. Justice Holmes, delivering the opinion, says:

"This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

There is no inconsistency between these statements and those made in the Pedersen Case. On the contrary, they point to the correct distinction. The engine on which the repairs were being made was then idle, and not engaged in either intrastate or interstate transportation. If, like the pumping station, in the operation of which the plaintiff here was injured, the engine had then been permanently devoted to interstate commerce, or was in use in interstate transportation and coincidently in intrastate transportation, a different result would follow from the reasoning of Mr. Justice Holmes.

The motion to remand is granted. An exception may be noted on behalf of defendant.