Mannix, J.
Plaintiff in his amended petition avers that he is the administrator of the estate of Plarry W. Randall, deceased, who died as the result of a railway accident on defendant’s railway, and which accident occurred on the first day of August, 1914, while the decedent was in the discharge of his duty as a fireman.
The amended petition avers that the corporate capacity of the defendant as a corporation organized under the laws of the state of Ohio, and that it owns and operates, a railroad running from *418 the city of Jackson, in the state of Michigan, to the city of Cincinnati, in the state of Ohio, and that the defendant company was engaged in interstate commerce between said cities.
After averments of general negligence, certain special acts of negligence are alleged in the amended petition, including recklessness on the part of the engineer, improper rail construction, rotten ties, improper ballasting, etc.
The defendant files an answer made up of three defenses. The first is practically a general denial; the second has to do with the assumption of risk, and the third defense sets out a state of facts seeking to bring the ease within the employers’ liability and workmens’ compensation law of the state of Michigan.
To this answer, the plaintiff files a reply in which he embraces, among other things, a first and second ground of reply to the third defense, and it is the second ground of reply to the third defense which is the storm center of this contention, because the case comes now before the court upon a demurrer to the second ground of reply to the third defense of plaintiff’s answer.
This third defense is rather long and embraces many propositions too extensive to set out herein. This defense has been tested on demurrer, as I understand it, and the demurrer overruled. The effect of this finding would be, that the 'facts stated in this third defense, if true, would be sufficient to bring the case within the application of the workmens’ compensation act and employers’ liability law of the state of Michigan.
The third defense of the answer, in addition to setting out the terms of the Michigan act, alleges that the defendant had filed a certain statement with the Industrial Accident Board, and accepted the provisions of said act, and that the decedent at no time ever notified the defendant company that he elected not to be subject to said act, and that the said decedent and the defendant were both subject to said Michigan act; and further—
“Defendant alleges that on the 1st day of August, 1914, and fa long time prior thereto, it ran a passenger train, known as train number 21 from Jackson to Hudson in the state of Michigan, and back from Hudson to Jackson, daily. That said train number 21 was the same train that was drawn by the engine upon which the said Harry W. Randall was fireman at the time of said accident. That the return train from Hudson to Jack *419 son was known as train number 22. That defendant while so operating said train number 21 at said time from Jackson to Hudson was not doing any interstate commerce business, but was engaged in intrastate commerce only.”
The second ground of reply, after alleging that the defendant was operating its railroad trains between Jackson, Michigan and Cincinnati, Ohio, admits—
“That while it is true the engine upon which Harry W. Randall was firing on August 1st, 1914, was drawing the passenger train from Jackson, Michigan, to Hudson, Michigan, on the aforesaid railroad highway, yet said engine and passenger train were a part of the general railway system of defendant from Jackson, Michigan, to Cincinnati, Ohio, and from Cincinnati, Ohio, to Jackson, Michigan, and said engine and passenger cars were instrumentalities engaged in interstate commerce over said railroad highway.”
And then avers and sets forth facts showing the schedule of trains running between Jackson, Michigan, and Yan Wert, Ohio, and other points, and finally avers, that the train upon which the decedent was injured left Jackson, Michigan, at eleven o’clock a. m. of said day bound for Hudson, Michigan, and that the said Harry W. Randall was injured between Jackson, Michigan, and Hudson, Michigan,; and finally avers that said train from Jackson, Michigan, to Hudson, Michigan was made up from the regular trains, including engine and cars that had been used in running from Jackson, Michigan to Yan Wert, Ohio, and that said run from Jackson, Michigan, to Hudson, Michigan, and from Hudson, Michigan to Jackson, Michigan, enabled passengers to take another train on defendant’s railroad to make transfers to points beyond the state of Michigan, and alleges that the decedent oiled, inspected, and fired the engine in order to keep it in readiness to commence its trip from Jackson, Michigan at 3.30 p. m. of said day to Yan Wert and Cincinnati, Ohio, over the same general railway system, and that said engine so inspected, oiled, etc. was used each day as above stated for this purpose, and that it was the negligence of the defendant that caused the engine to leave the track causing said wreck, and that the said wreck interrupted interstate traffic.
While the plaintiff in his first ground of reply to the second defense denies that the- decedent was engaged in intrastate com *420 merce only, yet in the second ground of reply to the third defense he does not deny the allegation of the third defense, to-wit:
“That defendant, while so operating said train number 21 at said time from Jackson to Hudson was not doing any interstate commerce business, but was engaged in intrastate commence only.”
And so, the real question is, whether the facts pleaded by the plaintiff in the second ground of reply to defendant’s third defense are sufficient to bring the action on the face of the pleadings within the scope of the federal employers’ liability act, and thus take it out of the application of the employers’ liability law of the state of Michigan.
Counsel for the defendant railway company claim, that its demurrer should be sustained on two propositions:
1. The defendant complains, that the plaintiff is seeking to make out his case in his reply, when the entire case should have been stated in the petition, and that he can not invoke the interposition of the federal act unless he states facts in his petition, or amended petition, that would justify the introduction of evidence along that line.
2. The defendant claims that plaintiff has wholly failed by the allegations in the second ground of reply, to bring the case within the provisions of the federal statute.
Eminent counsel for plaintiff and defendant presented many authorities upon’the first proposition and argued the same with vehemence and exceptional brilliancy.
If the court should resolve the second proposition in favor of the defendant, it will be unnecessary to pass upon the first proposition, and hence the court will take up the second ground first.
Section 8657 of the federal act provides that a common carrier, while engaged in comeree between the several states and territories, District of Columbia, or foreign nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce:
In other words, the carrier must be engaged in interstate commerce, and the person injured must be engaged in interstate commerce. Pedersen v. Delaware, etc. R. R. Co., 229 U. S., 146; North Carolina R. R. Co. v. Zachary, 22 U. S., 248.
The pleader for the plaintiff cites a great number of interest *421 ing authorities, and presents forcible argument supporting the same, claiming that the precise work in which the decedent was engaged, and that the engine and passenger ears were instrumentalities engaged in interstate commerce, and if not that precisely, that the work that the decedent was engaged in was a work so closely related to interstate commerce as to be practically a part thereof, and among other authorities cites the case of Roush v. B. & O. R. R. Co., 243 Fed., 712.
The opinion in this case was delivered by Judge Westenhaver of the United States District Court of North Dakota, and in which ease the learned Judge comments upon the Pedersen case, reported in the 229 U. 3., at p. 146.
In the Roush case, the defendant was engaged in operating a pumping station furnishing water indiscriminately and contemporaneously to locomotives engaged in both interstate and intrastate commerce, and the court held that the true test is, whether at the time of the accident the injured person was engaged in interstate transportation, or in work so closely related thereto as to be practically a part thereof. And in this same case, the learned Judge holds:
“That the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. ’ ’
And holds that a track or bridge may be both used in interstate and intrastate commerce, and when so used it is an instrumentality of the former.
The learned Judge quotes at length from the opinion in the case of Minneapolis etc. Ry. v. Winters, 242 U. S., 353, in which Mr. Justice Holmes lays down the rule:
“This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine, upon a road permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go one. It simply had finished some interstate business and had hot yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commence depended on the employment at the time, not upon remote probabilities or upon accidental later events.!’
*422 The court believes that there is a distinction in the class of cases which come under the head of “instrumentalities of interstate commerce” and also “in work so closely related thereto as to be a part of the same.” These cases are practically all confined to the repair of roadbeds, pumping stations, bridge carpenters, etc., whose work and instrumentalities are applied to both interstate and intrastate business.
Counsel for the plaintiff places great stress upon the Pedersen v. Delaware R. R. Co., 229 U. S., 146. In this ease the defendant was operating a railroad for the transportation of both freight and passengers in interstate and intrastate commerce, and the injured person was an iron worker employed in the alteration and repair of some of its bridges and tracks near Hoboken, N. J., and was injured while carrying a sack of bolts to said bridge. He was injured by an intrastate passenger train.
The opinion in the Pedersen case was delivered by Mr. Justice Van Devanter, and lays down the proposition, that a track or a bridge may be used in both interstate and intrastate commerce, and when it is so used, it is an instrumentality of the former, and that its double use does not prevent those repairing it from being engaged in an employment in interstate commerce.
It is clear in the mind of the court, that this rule is not inconsistent with the Winters case, supra, and not inconsistent with the case of the Illinois Central Ry. Co. v. Behrens, 233 U. S., 473, because Mr. Justice Van Devanter also wrote the opinion in the Behrens case, which was decided after the Pedersen case. The court in the Pedersen case sa^s, that the real test is this:
‘ ‘ Is the work in question a part of the interstate commerce in which the carrier is engaged ? ’ ’
It seems to this court, that this contention is settled by the Behrens case and by the case of Erie R. R. Co., v. Welsh, 89 O. S., p. 81. In the latter ease Mr. Justice Donahue proceeds from the theory that a presumption exists in favor of the proposition that the law of the forum should control, and this proposition can only be destroyed by pleading a state of facts which brings the case clearly within the federal act, and shows to the court that at the time the accident actually happened the injured person was engaged in interstate commerce. The learned judge uses this language:
*423 “The important inquiry is as to what he was doing at the time the accident occurred. * * * That service had been fully completed and ended, and he had not re-engaged in any similar employment, so there is no evidence in this record tending to prove that at the time the accident actually happened this plaintiff was then and there engaged in interstate commerce, and the mere fact that shortly before that time he had been so engaged, or that the next service his master would require would be of interstate character, can not and does not establish the fact that at the time of the injury he was so engaged. ’ ’
After a careful examination of the authorities, the court is of the opinion that the Behrens case is controlling. The finding of facts in the Behrens ease shows, that the intestate was in the service of the railway company as a member of a crew attached to a switch engine operated exclusively within the city of New Orleans; that he was a fireman and came to his death through a collision. That the general work of the .crew consisted in moving cars from one point to another within the city upon the company’s tracks and other connecting tracks; sometimes the freight was destined from within the city to without the city, or vice versa, and sometimes both classes. When the ears were empty, the purpose was to take them where they were to be loaded. In other words, the crew handled both interstate and intrastate traffic indiscriminately, sometimes moving both at once, but at the time of the collision the crew was moving ears loaded with intrastate freight exclusively, but upon completing that movement was to have gathered up and taken to other points several other cars as the step or link in their transportation to various destinations within and without the state. And Justice Van Devanter, following the Winfield case, held that injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was interstate commerce, but concludes with this finding:
“Here, at the time of the fatal injury, the intestate was engaged in moving several ears, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, *424 for by its terms the true test is the nature of the work being done at the time of the injury.”
The court then held that plaintiff’s decedent was not engaged in interstate commerce at the time of his death.
In the case at bar, there is no doubt but what on the day of his death the decedent was engaged in both interstate and intrastate commerce. The Yan Wert to Jackson trip was an interstate trip, and if he had been injured upon that trip, there is no question but what the federal act would have controlled. However, as soon as he reached Jackson, the interstate trip ended. Another trip began then from Jackson to Hudson, which was wholly intrastate.
The second ground of reply does not set forth facts sufficient to show that the crew and the train were engaged in interstate commerce.
The Behrens ease does not conflict with the Winfield case, because in the Winfield case the injury occurred at the end of the day’s work while the decedent was leaving the yards and was necessarily an incident of the day’s work generally, and the court held that the federal act applied because it was an incident of the day’s work generally, and was interstate only because of that reason, and because the day’s work included both interstate and intrastate traffic. This accident in leaving the yards in the Winfield case could not be distinguished from the day’s employment. His going and coming was necessary to his general work, which included both intrastate and interstate commerce.
From the facts disclosed in the pleadings, it appears that the decedent was employed in purely intrastate commerce at the time of his death, and that his work was impressed with the character of intrastate commerce, and the law of the state of Michigan must control.
The case at bar, like the Behrens case, is distinguishable from the Winfield case, and eases of like character.
When decedent, at the time of the accident, is engaged in intrastate commerce, his remedy is governed exclusively by the law of the forum, and it can not be said that trainmen, firemen, and such employees are employed in interstate commerce when they are assisting exclusively in the movement of intrastate traffic.
*425 “For instance, when they are employed on a train containing only trafile billed between two points in one state, the line between the two points being wholly within the state, they are engaged in intrastate commerce.” Robert’s Injuries to Interstate Employees, p. 70, section 29.
The court does not think that sufficient facts are pleaded to bring the case within the provisions of the federal act. The court also holds that this must be done by the plaintiff, because under the decision of Justice Donahue, the presumption is that the law of the forum will control.
Having come to this conclusion, it is not necessary to pass upon the first proposition involving the question that the plaintiff is not permitted to make out his case in his reply.
This ease was presented on both sides in a highly efficient and interesting manner, and eminent counsel have certainly aided the court in every way, and for that service the court expresses its thanks.
The demurrer-to the second ground of reply to the third defense is sustained. The plaintiff may have his exceptions.

 Affirmed by the Court of Appeals, May 19, 1919.