## BALTIMORE & O. R. CO. v. KAST.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1924.)

No. 3991.

1. **Commerce ⊜⟹27(5)—Temporary absence held not to break continuity of employment in "interstate commerce."**

A railroad employé, engaged in a work in interstate commerce, who had stopped work and was going after his lunch on the premises when injured, with the intention of returning immediately afterward to the same work, was employed in "interstate commerce" at the time of injury, within Employers' Liability Act, § 1 (Comp. St. § 8657).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Commerce ⊜⟹27(5)—Machinist's helper, making running repairs on engine, held employed in "interstate commerce."**

A machinist and his helper, who at the time of the helper's injury were engaged in making running repairs to an engine in use in interstate transportation, while it was laying off between runs at a roundhouse, held employed in "interstate commerce," within Employers' Liability Act, § 1 (Comp. St. § 8657.)

3. **Master and servant ⊜⟹286(3)—Railroad's negligence as to employé using pathway held for jury.**

Where a shop employé was injured while passing along a way customarily used by employés between the machine shop and roundhouse, within the inclosed grounds of defendant railroad company, by stepping on a socket wrench lying in the way, the question of defendant's negligence held properly submitted to the jury.

4. **Master and servant ⊜⟹265(5)—Doctrine of res ipsa loquitur may be applicable.**

The doctrine of res ipsa loquitur may be applicable in a suit between employer and employé for negligent injury to the employé.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Appeal and error ⊕⟹1140(1)—Excessive verdict may be corrected by remittitur.
	Where an excessive verdict may have been the result of misapprehension of evidence by the jury, and not of passion or prejudice, a remittitur may be a proper correction.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Harry L. Kast against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. P. Wood and W. T. Kinder, both of Cleveland, Ohio (Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, on the brief), for plaintiff in error.

Louis H. Winch, of Cleveland, Ohio (Payer, Winch, Minshall & Karch, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. Writ of error from a judgment of $17,500, based upon a verdict for $25,000, from which, as a condition to denying the motion for a new trial, Judge Westenhaver required a remittitur of $7,500. The facts bearing upon the question of liability are not in dispute, and are summarized by the judge, in the opinion filed by him on the motion for a new trial, as follows:

"Plaintiff was employed as a machinist helper at the roundhouse and shops of defendant at Garrett, Ind. This machinist and plaintiff were making what are called road or running repairs to a passenger engine. This engine had brought to Garrett an interstate passenger train, and was then detached and the train sent forward with another engine. This engine was bulletined to go out some 10 hours later, hauling another through interstate passenger train. It was usually and normally engaged in this passenger service, both before and after the accident. Defendant's superintendent noted on the bulletin board certain light running repairs required to be made to the engine, with instructions that they be made to prepare the engine for a contemplated interstate trip. A machinist, with plaintiff as his helper, was assigned to make these repairs. In so doing, the machinist needed a section of iron pipe, and instructed plaintiff to get it. Plaintiff started to another part of the defendant's premises, where such pipe could usually be found, and while on this errand, the supper or lunch gong sounded. According to his testimony, he was still in pursuit of the pipe at the time he was injured. According to another view of the testimony, he had suspended his errand and was going from the roundhouse across an open space of defendant's premises to another building, where its employés kept their lunch baskets and ate their lunches. In crossing an open areaway between the roundhouse and another building customarily used by employés, he stepped upon a socket wrench, fell, and was injured.

"He was passing over a part of defendant's premises ordinarily used by employés for that purpose. While it was not a paved or clearly defined path, the travel over it had beaten the cinders with which the ground was covered, to the form and appearance of a traveled roadway. Beside this way were tanks, which at times emitted steam. As plaintiff, in company with another employé, was passing these tanks, a heavy volume of steam suddenly escaped, completely obstructing their sight in all directions. Plaintiff's companion, in trying to get through and out of this steam, bumped into an upright post, and plaintiff stepped upon a socket wrench lying in the traveled way, and sustained his injuries."

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1,2] 1. Were the parties engaged in interstate commerce at the time the plaintiff sustained his injuries? We agree entirely with the views expressed by the trial judge on this point in the opinion on the motion for a new trial, as follows:

"The court charged as a matter of law that the parties were engaged in interstate commerce. Defendant's further request was to go to the jury on the issue of interstate commerce, on the theory that plaintiff, when injured, had discontinued his work and was bound for lunch. There is nothing in this separate objection. If the engine repair work was interstate commerce, plaintiff was so engaged, notwithstanding he had quit work and was going to lunch [on the premises], with the expectation of immediately returning to the same work. North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; M., K. & T. R. R. Co. v. United States, 231 U. S. 112, 34 Sup. Ct. 26, 58 L. Ed. 144. Whether the machinist and his helper, thus engaged in making repairs during the lay-over period of an engine between two interstate trips, are engaged in interstate commerce, has not, so far as appears, been as yet decided by the United States Supreme Court, nor by any Circuit Court of Appeals. This question must be answered upon a consideration of the principles of law stated and applied in analogous situations. The test is whether or not the work, which the employé was doing when injured, was a part of interstate transportation or so closely related to it as to be practically a part of it. If it is, he is engaged in interstate commerce, otherwise not."

After discussing the facts in Walsh v. N. Y., N. H. & H. R. R. Co., 223 U. S. 5, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Pederson v. D. L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Roush v. B. & O. R. R. Co. (D. C.) 243 Fed. 712; North Carolina R. R. Co. v. Zachary, supra; Louisville & N. R. Co. v. Parker, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119; New York Central R. R. Co. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1913C, 439, Ann. Cas. 1917D, 1139; New York Central R. R. Co. v. Porter, 249 U. S. 168, 39 Sup. Ct. 188, 63 L. Ed. 536; Phila., Baltimore & Washington Ry. Co. v. Smith, 250 U. S. 101, 39 Sup. Ct. 396, 63 L. Ed. 869, holding an employé to be engaged in interstate commerce; Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; C. B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Chicago, etc., Ry. Co. v. Kindlesparker, 246 U. S. 657, 38 Sup. Ct. 425, 62 L. Ed. 925, reversing 234 Fed. 1 (6 C. C. A.), and Industrial Accident Commission v. Davis, 259 U. S. 182, 42 Sup. Ct. 489, 66 L. Ed. 888, holding him not so engaged—the trial judge continued:

"In the instant case, the engine was placed in a roundhouse, and not sent to repair or construction shops. The engine was not really withdrawn from interstate commerce in order to make the repairs in question. It had merely completed its usual interstate trip and was making its usual lay-over before beginning its next trip, which it was then known would be in interstate commerce. During this usual lay-over, the employés were engaged in making the usual running repairs, such as can be made upon a side track, or in a roundhouse, and such as are usually made during a lay-over. The work in question was the legal equivalent of inspecting, oiling, firing, and preparing an engine, and getting it ready for an intended interstate trip, as in the Zachary Case, or the replacement of a broken drawbar, so that the car could resume its interstate journey, as in the Walsh Case. While these running repairs

were being made, there was not merely an expectation that the engine might thereafter start on an interstate trip, but the work was being done to enable the engine to start upon an interstate trip, and is therefore within the test stated by Mr. Justice Holmes in the Parker case. In my opinion, plaintiff and defendant were engaged in interstate commerce."

[3] 2. Did the facts justify the submission to the jury of the question of defendant's negligence? This socket wrench was about two feet long, the big end three inches in diameter, three or four inches long, "like an axle [hub] with one spoke in it." As his immediate superior, the machinist, testified, the area between the roundhouse and trackshops was inclosed company property used by its employés, and nobody except company employés worked there; these wrenches were used by employés, and "by no one else that I know of." The wrench lay in the pathway which was "used by every employé going from the south door of the roundhouse to the south door of the machine shop."

As the court charged, the evidence did not warrant a finding that defendant knew, or in the exercise of ordinary care should have known, that the wrench was there. But for the abolition of the fellow servant rule, no case of negligence would have been made out. Furthermore, even though the master is liable for a fellow servant's negligence, the bare fact that the wrench lay in the path would not have sufficed, and the court properly so charged, because a verdict thereon would have been based, at the best, upon mere probabilities without supporting evidence. As stated in Copeland v. Hines, 269 Fed. 361, 363 (C. C. A. 6):

"A mere conjecture, standing upon a basis of uncertain inference, does not make substantial evidence. Such a case lacks both the quantitative and the qualitative essential minimum."

But the further circumstances above narrated, especially with no question of assumption of risk raised in the case, required the submission of the issue of defendant's negligence to the jury. As the trial judge pointed out in charging the jury, all of the facts and circumstances surrounding the case, which should have been known to an employé, must be taken into consideration in determining whether the leaving or placing of the wrench at the place of the accident was or was not negligence, if indeed it was placed or left there by an employé.

As to whether a fellow employé or a stranger was responsible for its being there, some of the facts and surrounding circumstances to be considered by the jury were that this was a path of travel for the employés; that the works were fenced in and ordinarily accessible only to employés, and not to strangers; and that employés, and no one else, so far as the machinist knew, used such wrenches. True, there was no direct proof of negligence by any specific individual. The recited facts, however, afforded abundant probability that a fellow servant, intentionally or otherwise, left the wrench in an improper place.

It is not, as contended, equally logical to assume that the wrench fell on the path from a conveyance carrying tools, without there being any negligence accompanying such fall. The evidence is not that tools were trucked along this path; it is that workmen coming to and from the shop, and presumably carrying tools for work, used it; but, even

if so trucked, it is difficult to see how, without negligence, either in the loading or the hauling, a tool of this size would fall off unobserved. Nor has there been suggested any other theory of mere accident, to account for the presence of the wrench, which is probable enough to make a case of balancing uncertainties against one another.

[4] While the mere fact of the accident itself, without more, would not justify the application of the doctrine of res ipsa loquitur, this rule, properly understood as a rule of circumstantial evidence, is none the less applicable as between the employer and employé. As stated in Byers v. Carnegie Steel Co., 159 Fed. 347, 86 C. C. A. 347 (C. C. A. 6):

"But there is no hard and fast rule that the doctrine of res ipsa loquitur can in no case be applicable in a suit by an employé against an employer for negligent injuries. On the contrary, the rule referred to has been applied in numerous cases of that nature; the applicability of the rule being determined by the circumstances under which the accident is shown to have happened."

In Central R. R. Co. of N. J. v. Peluso, 286 Fed. 661 (C. C. A. 2), this subject has been recently fully considered, the decisions of the Supreme Court reviewed, and the same conclusions reached. A petition for certiorari, based solely upon the contention that this decision was in conflict with New Orleans & N. E. R. R. Co. v. Harris, 247 U. S. 367, 38 Sup. Ct. 535, 62 L. Ed. 1167, was denied. 261 U. S. 613, 43 Sup. Ct. 359, 67 L. Ed. 827. But see New York, C. & St. L. R. Co. v. Biermacher (Ohio) 143 N. E. 570.

It does not devolve upon the plaintiff to exclude every possibility of a purely accidental cause for the injury; on the other hand, as stated in Virginia & S. W. Ry. Co. v. Hawk, 160 Fed. 348, 352, 87 C. C. A. 300, 304 (C. C. A. 6), "a case should never be left to a jury simply on a question of probabilities, with a direction to find in accordance with the greater probability," but, as further therein stated, "probabilities may help out items of evidence from which an inference can be drawn."

[5] 3. In requiring the remittitur, the trial judge said:

"There was much fact evidence tending to show that plaintiff had been seriously injured and greatly disabled. The lower part of his body, if that testimony is to be believed, was for a substantial period almost entirely paralyzed, and even at the date of trial many of the normal functions were impaired, showing serious, if not permanent, injury to some of the trunk nerves. Rejecting the expert evidence, a substantial verdict is still justified. However, in my opinion, the verdict rendered is excessive to such a degree as to manifest bias, prejudice, or some misapprehension on the part of the jury."

He then proceeded:

"Carefully weighing all the evidence, and carefully refraining from substituting my judgment for the judgment of the jury, I am still of opinion that a verdict in excess of $17,500 is so manifestly against the weight of the evidence that it evidences passion and prejudice and cannot be sustained."

If the trial judge had been of the opinion that the verdict was based upon passion or prejudice, it would have been his duty to set it aside, and not merely to compel a remittitur. But in the absence of anything in the record, unless it be the size of the verdict, tending to show that

the jury weré inflamed against defendant, or that their sympathies were unduly aroused by plaintiff, we cannot construe the language quoted from the opinion as a finding that passion or prejudice influenced the verdict as to liability, or that these considerations, rather than "some misapprehension" on the part of the jury, led to what the trial judge deemed an excessive verdict. We concur in his judgment that, in view of the undenied substantial injuries, the required deduction of 30 per cent. fully compensated for any such misapprehension as to the extent of the injuries.

Judgment affirmed.